## Catherine Gordon, Appellant, v. Mary E. Baker, Appellee.

### Gen. No. 5,759.

1. DIVORCE, § 114*—*when payment of alimony is terminated.* The remarriage of a divorced wife does not *ipso facto* dissolve the obligation to pay alimony but it is a reason for absolving husband from the burdens imposed by the decree.

2. DIVORCE, § 107*—*when alimony may be changed.* Past due alimony is a vested right and cannot be changed by a subsequent order of the court.

3. EQUITY, § 76*—*when suit is barred by laches.* Bill to subject certain lands to the payment of a decree for alimony rendered more than thirty years before the bill was filed, *held*, barred by laches, especially since the divorced wife had made no attempt to collect the alimony and both parties had remarried.

Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1913. Affirmed. Opinion filed August 2, 1913. Rehearing denied October 9, 1913.

SHEEN & GALBRAITH, for appellant.

W. T. WHITING, for appellee.

MR. JUSTICE CARNES delivered the opinion of the court.

This is a bill filed by Catherine Gordon, appellant, to subject certain lands, to which appellee, Mary E. Baker, had the record title, to the payment of a decree for alimony she obtained against Stephen B. Baker in January, 1879, more than thirty years before the bill was filed.

Issues were joined, the cause submitted to the master who heard the proofs and reported adversely to appellant's claim, objections and exceptions were heard and decree entered in accordance with the master's report dismissing the bill for want of equity, from

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

which this appeal is prosecuted. It appears from the pleadings and proofs that appellant was divorced from her then husband, Stephen B. Baker, in January, 1879; that the decree of divorce gave her the custody, control and education of their minor child, Roy Baker, then about six years old, and fifty-two dollars a year permanent alimony, payable quarterly in advance until the further order of the court; that she never in fact took care of the child but it remained with the father; no execution ever issued on said decree and she never received or made any attempt to collect the alimony until the commencement of this suit; that about three years after her divorce she married one Coolidge and lived with him about eighteen months when they were divorced, and in September, 1885, she married her present husband, John T. Gordon, and has lived with and been supported by him ever since.

Stephen B. Baker married appellee September 7th, 1880, and removed with her from the State of Illinois to the State of Iowa in 1886, where they resided until his death September 30, 1911. November 19, 1889, Stephen B. Baker acquired by inheritance the interest in land in Peoria county in question, and on March 4, 1901, he executed a quitclaim deed of the same to appellee, his then wife, which deed was then placed of record. A partition proceeding was begun in May, 1901, involving title to this land and was pending about two years, in which appellant was party, but did not seek to enforce her decree, and the bill seems to have been dismissed without any positive action taken. After the bill herein was filed the land was sold in a partition proceeding and a part of the proceeds held in the hands of the master in chancery awaiting the result of this suit.

The controlling question is whether appellant at the time of filing her bill had any rights under her decree for alimony that she could ask a court of equity to aid her in enforcing.

It is not claimed that the decree for alimony is, or ever was, a lien on the land in question, no execution ever issued thereon, Stephen B. Baker had no title to the land until 1889. (R. S. ch. 77, sec. 1, J. & A. ¶ 6747.) No question is raised as to the practice in attempting to reach this fund in this way. The main questions argued are of the power of a court of equity to modify or set aside a decree for alimony, and of the doctrine of laches. It is claimed by appellant she did not by her remarriage lose her right to enforce payment of alimony either before or after the event, and it is true that fact did not of itself have that effect. The remarriage of a divorced wife does not *ipso facto* dissolve the obligation to pay alimony but it is a reason for absolving a husband from the burdens imposed by the decree. *Stillman v. Stillman,* 99 Ill. 196.

"The divorced wife abandons the provision made for her support out of the estate of her former husband by the decree of the court, for that adequate support which she contracts for by the subsequent marriage." *Id.* Past due alimony is a vested right and cannot be changed by a subsequent order of the court. *Cole v. Cole,* 142 Ill. 19; *Craig v. Craig,* 163 Ill. 176.

"A defense peculiar to courts of equity, is that founded upon the mere lapse of time, and the staleness of the claim in cases where no statute of limitation directly governs the case. In such cases, courts of equity act sometimes by analogy to the law, and sometimes act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights, or long and unreasonable acquiescence in the assertion of adverse rights." *Carpenter v. Carpenter,* 70 Ill. 457.

"When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale,

there must be some cogent and weighty reasons presented why it has been permitted to become so."
*McDearmon v. Burnham,* 158 Ill. 55.

It is apparent that the provision for alimony was made with a view only of support of appellant and the minor child which she was given the custody of. Ten or twelve instalments of alimony fell due before appellant remarried and more than that number after that time and before her divorced husband moved out of the State. There is a presumption of law as well as of common sense that there was a reason for not attempting to collect these instalments; appellant apparently realizing this, attempts the explanation that she was in fear of Stephen B. Baker, and that he threatened to kill her if she attempted to enforce the decree, either as to alimony or the custody of the child. This explanation rests upon her own unsupported testimony. It is true that Stephen B. Baker was a nonresident of this State for about twenty-four years before his death, and that fact arrested the running of the statute of limitation against him. But he acquired by inheritance the land in question more than twenty years before his death and therefore there was property within the jurisdiction of the courts of this State available for the satisfaction of any judgment or valid claim against him. Appellant alleges she did not know of this; but she is certainly charged with knowledge for about ten years before his death, because she was in 1901 a party to a suit, appearing by counsel, of which suit this land was the subject matter. If she had made effort to enforce her decree for alimony, at any time after her remarriage, the defendant would have been entitled to a hearing on the question whether he had paid the past due instalments, and would probably on his application have been relieved from further payment. By delaying action more than thirty years and until

after the death of the party to be charged, defenses are avoided, and a court of equity is asked to enforce the payment of a decree that it would presumably have suspended, had it been asked to do so more than twenty-five years before this suit was brought. This is not a case where the other party has presumably suffered no loss by laches of the complaining party. Stephen B. Baker was under a duty to provide for appellee, his wife who had lived with him for more than thirty years. Had the matter been brought to the attention of a court of equity having jurisdiction of the parties any time after the marriage of appellant, it would not have deprived him of the ability to perform that duty by requiring him to aid in the support of the wife of another man. The facts present a strong case for the application of the doctrine of laches so often applied to defeat claims so long delayed that valid defenses are or may be precluded. The trial court did not err in applying that rule to this case.

It is argued that there was in fact no conveyance to appellee, that the deed in question was never delivered, but was executed and placed of record for the purpose of defeating the rights of appellant, and in any event was void as an attempted testamentary disposition of property. It was apparently executed in an attempt by Stephen B. Baker to provide for his wife. The record shows that he died intestate having transferred all of his other property, which was of little value, to appellee in his lifetime, and that the value of this property was about six thousand dollars. Under our view of this case appellant has no standing to question the validity of this conveyance, and we need not consider that part of the record and argument. If the deed was never delivered and the title to the property in question remained in Stephen B. Baker at the time of his death,

appellant would still be entitled to no relief under her bill.

Finding no error in the record the decree of the trial court is affirmed.

*Affirmed.*