Kathleen E. Anderson, Plaintiff-Appellee, v. Willard C. Anderson, Defendant-Appellant.

Gen. No. 11,845.

Second District.

April 29, 1964.

Berry & Simmons, of Rockford, for appellant.

Reno, Zahm, Folgate & Skolrood, all of Rockford (H. Emmett Folgate, of counsel), for appellee.

MORAN, J.

The parties to this cause were divorced in the Circuit Court of Winnebago County in 1952. The decree awarded custody of their minor child to Kathleen E. Anderson, the plaintiff below. The decree further provided that Willard Anderson, the defendant below, was to pay the sum of $12.50 per week for child support. On November 30, 1962, the plaintiff, who by then was remarried to one Erland Nelson, filed a petition alleging that defendant had not made any payments since September 10, 1960, although demand had been made upon him, and that the sum of $425 was owing for the period from September 10, 1960, to November 17, 1962. The petition prayed for judgment against the defendant in the amount of the arrearage, and, in later pleadings, the plaintiff added a prayer for interest and reasonable attorneys' fees. The defendant filed an answer denying that any demand had been made upon him for support payments during the period in question, and stating that he had consented to the adoption of the minor child by Erland Nelson, the plaintiff's new husband, in return for the promises of plaintiff and Nelson to seek no further child support payments from defendant. The Answer went on to allege that, in reliance upon the promises of plaintiff and Nelson to adopt the child and hold him harmless from further support payments, defendant had made no attempt to visit the child. Defendant further alleged that, by virtue of the agreement and the de-

141

fendant's reliance upon it, the plaintiff was estopped to claim the alleged arrearage.

The petition was heard by the court on April 9, 1963. The plaintiff testified that she received no child support money from the defendant between September 10, 1960, and the date of the hearing. The child was 15 years of age at the time of the hearing. Plaintiff admitted that she had made no demand on the defendant to pay child support from September 10, 1960, to November 17, 1962, just two weeks before the petition was filed. She stated that her failure to make demand on the defendant was due to the fact that the child would get upset and cry if she thought she was going to have to spend time with her father. Plaintiff stated that she knew nothing of any plan for Erland Nelson to adopt the child, and she denied that she had ever discussed such a prospect with defendant's attorney, Mr. Berry.

The defendant testified that he had been present at a conversation in 1960 between his attorney, Mr. Berry, and the plaintiff and her then attorney, Mr. Nelson. The conversation took place in the court house, where the parties had assembled for a hearing on a petition by the plaintiff to increase the support payments to $25 per week, and a counter-petition by the defendant alleging interference with his visitation rights and seeking custody of the child during certain periods of the year. Defendant testified in substance that, at this courtroom conference in 1960, the plaintiff and Mr. Nelson stated to Mr. Berry that they wanted to adopt the child in order to terminate the problems about support payments and visitation. Thereafter, defendant signed a consent to the adoption and left it with the County Judge. He did not know what happened to the consent, and he did not know whether the adoption ever took place. Defendant stated that he had not seen the child since the fall

of 1960, and that no demand for child support was made upon him from that time until the instant petition was filed in November, 1962.

The defendant's attorney, Mr. Berry, was called as a witness by the court. He testified that in the fall of 1960 ". . . at a time when a petition for change of custody of Judy Kay Anderson from Mrs. Anderson to Mr. Anderson was pending before this court, and there had been a dispute in regard to back payment of child support, Mr. Erland Nelson, Mrs. Anderson and I talked in this courtroom in regard to the final settlement of all difficulties between them. It was Mr. Nelson who said that he and Mrs. Anderson were going to be married and that they would adopt Judy Kay Anderson and Mr. Anderson would not be held accountable for any further claims for support."

Erland Nelson, plaintiff's former attorney and present husband, testified that he and plaintiff were married on April 2, 1960. He stated that he did tell Mr. Berry, defendant's attorney, that he was going to adopt the child, although he does not recall the particular conference in the courtroom described by defendant and Berry. Nelson admitted that he did ask a Mr. Powers, another attorney, to "make contact with Mr. Berry in regard to Mr. Anderson's consenting to the adoption." Powers then wrote a letter to Berry, dated December 30, 1960, reading as follows:

> "This is to advise that I have received word from my clients that they are ready to proceed with the adoption matter we discussed previously. Would you please be so kind as to have your client execute consent to this adoption. After we receive the consent, we will file our Petition for Adoption."

As previously noted, the defendant, presumably on the advice of Berry, did execute a consent and hand it to

143

the County Judge. It appears that the Consent was thereafter mislaid and never was filed. Neither was any adoption proceeding ever filed. The child has lived with the Nelsons since their marriage, and Mr. Nelson has supported her. He admitted that he never made any demand upon defendant for any support payments.

The child support provision of the divorce decree was never modified, and the alleged agreement concerning Nelson's adoption of the child was never made a matter of record.

The trial judge made various comments during the course of the hearing which clearly indicate his belief that an adoption was discussed by the parties and that plaintiff, notwithstanding her profession of ignorance, was well aware of the proposed adoption and of the defendant's consent to it. The court remarked, for instance, "She says there never was any discussion. I'm inclined to believe she knew about the adoption of the child. I just can't conceive if she thought he (defendant) was going to pay for it, he would go along for three years without paying, and she made no objection to it with her husband being a lawyer. . ." The record also reflects a conclusion by the trial court that defendant had been misled by the conduct of the Nelsons:

> "There isn't any doubt in my mind that this man thought he consented to the adoption on September 10, 1960. . .

> ". . . here is a man that was led to believe that this child was adopted, and Erland Nelson was going to take care of it, and he stopped paying. . .

> "This man was led to believe there was an adoption. . ."

At the conclusion of the hearing the court continued the case for briefs on the law, and, on May 17, 1963,

144

entered the order which is the subject of this appeal. The pertinent portion of the order provides:

"It is Ordered that Willard C. Anderson be and he is hereby found in contempt of this Court for failure to pay the sum of $1737.50 as past due child support for the period of from September 10, 1960 to and including May 11, 1963;

"It is Further Ordered that the defendant shall purge himself of such contempt by making the regular payments of $12.50 per week for child support as required by said order of Court entered herein on October 23, 1952, and by the payment of the additional sum of $7.50 per week until the aforesaid arrearage in the sum of $1737.50 has been fully satisfied; after which said Willard C. Anderson shall resume the regular payments of $12.50 per week."

■ The defendant, Willard Anderson, is the appellant. He contends that the support order was modified by the adoption agreement, that he performed his part of the agreement by consenting to the adoption, and that, therefore, the portion of the agreement relieving him from further support payments should be enforced. He also asserts that the plaintiff, by her participation in the adoption discussions and her subsequent silence, has misled him to his detriment and is therefore estopped from collecting the back payments. Finally, the defendant argues that his conduct was not willful or contumacious and that the lower court could not properly find him to be in contempt.

The plaintiff has filed a cross-appeal. She does not quite concede that defendant's conduct fell short of being willful and contumacious, but she does agree that the contempt order is improper. She argues that she did not pray for a contempt finding, but sought, rather, a money judgment for the full amount due.

Plaintiff cites authorities to the effect that past due installments of child support money are a vested right and cannot be modified in any respect by the court. Plaintiff further contends that, since it was necessary for her to retain an attorney for the purpose of enforcing the terms of the decree, the court should have awarded reasonable attorneys' fees. Finally, plaintiff says she should have interest on the money at five per cent per annum.

It is true that "The power to enforce payment of support money by contempt is limited to cases of willful and contumacious refusal to obey the order of the court." Wick v. Wick, 19 Ill2d 457, 461, 167 NE2d 207 (1960). As we have indicated, the court below was convinced from the evidence that the defendant had been led to believe the child was adopted and that his own obligation has ceased. It is undisputed that neither the plaintiff nor her husband informed defendant that the adoption had not been effected, and that neither of them ever raised the question of defendant's liability until November of 1962. Accordingly, there is no basis for a finding that defendant's conduct during that period was willful and contumacious. As for the defendant's failure to make payments after November of 1962, when he was on notice that no adoption had occurred and demand for payment was made, a somewhat more difficult problem would be presented. However, we agree with the plaintiff that, since she did not seek a contempt order, the trial court, at least under the circumstances of this case, should not have entered one. For these reasons, the order of the Circuit Court must be reversed.

The plaintiff's petition prayed for a lump sum judgment, interest and attorneys' fees. It is the only petition she filed, and the parties are entitled to a ruling on it.

This is a difficult case, and we think it appropriate to express some view concerning the questions which

will arise on remand. The plaintiff in her briefs in this court argues strenuously that, since the decree was never modified, there is no action the court can take on her petition other than to grant everything she asks. Without attempting to suggest what rulings should be made, we want at least to indicate that in our view the matter is not so cut and dried, and that the trial court does have some discretion.

██ It is true that a court cannot reduce the amount owing on past due installments of child support. Shuff v. Fulte, 344 Ill App 157, 165, 100 NE2d 502 (3rd Dist 1951); Helkelkia v. Sonzinski, 223 Ill App 30, 31 (4th Dist 1921). This is not to say, however, that in a proper case the court cannot give effect to an agreement by a party to waive the payments or accept a lesser amount. See, e. g., Cavenaugh v. Cavenaugh, 106 Ill App 209 (2d Dist 1902); Wolfe v. Wolfe, 303 Ill App 188, 24 NE2d 871 (1st Dist 1940). Moreover, even in the absence of an enforceable agreement, we know of no reason why the doctrine of equitable estoppel could not be applied as to all or part of the past installments in an appropriate case. Plaintiff admits as much in her brief, where she states that she has a vested right to the past installments ". . . unless estopped to assert her rights." See generally the helpful Annotations in 57 ALR2d 1139, 137 ALR 884, 70 ALR2d 1250.

██ As to the plaintiff's prayer for interest and attorneys' fees, this is a matter within the sound discretion of the court. See, e. g., Sutton v. Lieb, 199 F2d 163, 165 (7th Cir 1952).

The order of May 17, 1963, is reversed and the cause remanded to the Circuit Court of Winnebago County for further proceedings consistent with the views herein expressed.

Reversed and remanded.

ABRAHAMSON, P. J. and CARROLL J., concur.