Dorothy A. Atwater, Plaintiff-Appellant, Cross-Appellee, *v.* A. G. Atwater, Defendant-Appellee, Cross-Appellant.

(No. 57668;

First District (5th Division)—March 1, 1974.

Edward D. Rosenberg, of Rosenberg & Kosin, of Chicago (Ellis B. Rosenzweig, of counsel), for appellant.

Richard A. Makarski, of Chicago (Chapman and Cutler, of counsel), for appellee.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This is an appeal by plaintiff from the court's denial of her claim for interest on the unpaid installments of a property settlement agreement incorporated into a decree of divorce. Defendant cross-appealed from the judgment entered against him for $78,000, the past due property settlement payments.

On October 8, 1957, a decree of divorce was entered which included an agreement for payment of a lump sum settlement in lieu of alimony of $127,500, $49,500 of which was paid to plaintiff. The issues herein relate to the balance provided for in section 2(c) and 3 of that agreement.[1] The payments under those provisions were to begin four years from the date of the decree and were to be defeasible only upon the death or remarriage of the plaintiff prior to the time the monthly installments were to become "due and owing". Defendant stipulates that with the exception of one installment, no payments were made pursuant to this portion of the agreement.

In 1957, plaintiff met Alfred B. Mattson, and in August of 1958 she and Mattson traveled to Las Vegas, Nevada. There they applied for a marriage license, which was issued on August 11, 1958. Both plaintiff and Mattson testified, however, that no marriage was ever entered into. In support of this contention, plaintiff introduced affidavits from the recorder of Clark County, Nevada, which indicated that from 1956 to 1961 no marriage record existed for Alfred Mattson or Dorothy Atwater. Additionally, plaintiff introduced a completed marriage certificate which Mattson testified was a blank form and in which he inserted the fictitious names of a justice of the peace and two witnesses and the date of August 10, 1958. An additional affidavit from the county clerk of Clark County was offered at trial, wherein it was stated that in the year 1958 there was no justice of the peace in Clark County having the same name as that appearing in the Mattson's marriage certificate. All three documents were received in evidence.

After Mattson and plaintiff returned to Chicago they resided together and, between 1958 and 1971, held themselves out to be husband and wife. The most significant occurrence of this period took place in Sep-

---

[1] "2(c) The sum of Seventy-eight Thousand Dollars ($78,000.00) in seventy-eight (78) equal monthly installments of One Thousand Dollars ($1,000.00) each, commencing at a date forty-eight (48) months from and after the first day of the month subsequent to that in which any decree for divorce shall be entered in favor of the wife and against the husband in the cause aforementioned."

3     * * * The right of the wife to receive the payments provided in paragraph 2(c) shall be deemed to be defeasible only in the event of the death or the remarriage of the wife at a date prior to that on which any of the monthly installments required by the said paragraph 2(c) to be paid shall have become due and owing."

tember of 1961, when plaintiff requested and had a meeting with defendant. At the meeting, plaintiff informed defendant that she had not married Mattson but was only living with him and, for that reason, payments under section 2(c) of the settlement agreement were to be made. Plaintiff testified that at the meeting defendant indicated he would not 'pay a red cent' and, if she pursued her request, he would make trouble for plaintiff and her daughter by a previous marriage. Defendant, although not present at trial, stated in an affidavit filed in support of a motion for continuance, that he in fact had such a meeting with plaintiff wherein she informed him that she was not married to Mattson. However, in his affidavit defendant stated that in the absence of any proof to substantiate plaintiff's statements, he would continue to believe that she was married. Accordingly, a short time after the meeting, defendant's attorney sent a letter to plaintiff wherein he indicated that in view of plaintiff's "remarriage", all future payments under 2(c) were to cease. From 1961 to 1971, plaintiff and Alfred Mattson lived together and engaged in conduct designed to lead people to believe that they were husband and wife.[2]

On March 8, 1971, plaintiff filed a petition seeking judgment for the unpaid sums of the settlement agreement plus interest of $28,470. Defendant, by his answer, admitted that he had made no payments under section 2(c) of the agreement but denied he owed any sums whatsoever. Defendant further denied plaintiff's allegation that she had not remarried and affirmatively raised the defenses of estoppel, laches, waiver and the statute of limitations.

After the denial of two motions by defendant for continuance, the trial proceeded and concluded with a finding that plaintiff had not remarried and therefore defendant was obligated to make payment pursuant to the aforementioned agreement. The court, however, refused to award the payment of interest on the unpaid amounts. It was from this order that both parties perfected appeals. Subsequent to the above trial, defendant has had conservators appointed for both his person and his estate.

OPINION

## I.

Defendant contends that the trial court erred in denying him continuances on February 14 and 29, 1972. The first motion for a continu-

---

[2] All of the following were done jointly and in the name of Mr. and Mrs. Alfred Mattson: signed apartment leases; filed joint income tax returns; conveyed property by warranty deed; purchased property as co-owners; car insurance taken in both names; press announcement of plaintiff's daughter's engagement. In addition, the letterhead of the organizations to which plaintiff belonged read Mrs. Alfred Mattson; her voter's registration card read the same, and when she applied for unemployment compensation she used the name Mattson.

ance was based upon the illness of defendant, and in support thereof an affidavit was filed containing a letter from a California doctor reciting defendant's inability to attend the trial. The motion was denied. After a continuance due to defendant's attorney being on trial elsewhere, the defendant moved for a continuance on the day set for trial. Again the motion for continuance was predicated upon defendant's illness, and in the supporting affidavit the following information was presented: (1) that defendant's physical condition prevented his attendance at trial and also prevented his testimony from being preserved by a deposition; (2) that if the continuance were allowed and defendant were able to appear in court, he would testify that plaintiff had represented to him that she was remarried; however, at the meeting held in 1961, plaintiff had informed him that she was not married but only living with Mattson. Defendant chose not to believe plaintiff, but requested that plaintiff demonstrate to him that she had not remarried; and (3) that defendant never received notification from plaintiff relating to the possibility that she was not remarried, despite the fact that defendant indicated his willingness to make payments if plaintiff brought information in support of her representations of non-marriage and stopped using the name of Mattson and discontinued representations to her daughter that she was married.

This motion was also denied. On appeal, defendant asserts that because of his absence at trial, he was denied the right to present evidence which was material to his defense.

The affidavit noted above indicates that at the 1961 meeting with plaintiff, defendant was made aware of the fact that plaintiff asserted she was not married to Mattson. Further, the affidavit states that defendant believed she was remarried and he, therefore, would not make any payments. Essential to the defendant's argument and necessary to avoid the dictates of the settlement agreement, is the establishment of plaintiff's remarriage. In the affidavit, defendant states nothing which, if offered at trial, would have (1) contradicted her statement to him that she was not remarried; or (2) established that she was remarried. As stated in *People ex rel. Linton v. Barth,* 267 Ill.App. 574, 575:

> "It was incumbent upon appellant to show that he had a meritorious defense and the materiality of the facts which he expected to prove by the absent witness."

As further stated in *North Federal Savings & Loan Ass'n v. Tokoph,* 110 Ill.App.2d 254, 258, 249 N.E.2d 241:

> "The unavailability of a prospective witness even though due to excusable cause such as illness, need not and should not be an appropriate reason for delay. It must also appear that the pro-

spective witness's testimony would be material to the issues involved. Otherwise, the only conclusion warranted would be that delay is being sought for its own sake and not to avoid prejudice."

In addition, the affidavit contained no information indicating that, if the continuance were granted, defendant would appear within the reasonable future or that his testimony would be procured. The law requires the affidavit to set forth the facts on which the expectation is based that the witness will be present or that his attendance will be procured. It is not erroneous to refuse a continuance where there is no reasonable prospect of obtaining the desired evidence at some future time. (*Cairo Lumber Co. v. Corwin*, 325 Ill.App. 319, 60 N.E.2d 110.) These inadequacies in the affidavit, considered in the light of the apparent deterioration of defendant's condition, amply support the trial court's denial of the motion for continuance.

Finally, we believe that defendant lacked diligence in memorializing his testimony via a deposition. In the early case of *Mantonya v. Huerter*, 35 Ill.App. 27, the defendant, suffering from nervous prostration, was advised by his physician to take a European trip and, as a result, was unable to attend his trial. Further, his testimony was not preserved by the taking of a deposition. The court, in responding to defendant's argument that the trial court erred in denying his motion for a continuance, stated at pages 28 and 29:

"Nothing sworn to in these affidavits is inconsistent with the supposition that Mantonya's deposition might, and should have been taken before he departed for Europe. The suit was begun December 15, 1887, and the issues were formed February 3, 1888, so that there was ample time for taking the depositions if the circumstances warranted that course. The affidavits are very vague as to the length of time Mantonya had been ill before the trial. One physician swears he had been suffering 'for some time past from nervous prostration which has assumed a serious aspect during the past few months;' the other, that 'he has, for a considerable time, and still is suffering from nervous prostration;' while the attorney swears that 'he has been an invalid for many months past.' All that may be true, and still he may have been advised by his physicians to go to Europe, and determined to adopt their counsel, before his malady disqualified him for the excitement of cross-examination. The affidavits do not state *when* the European trip was advised, nor *when* he determined to go. In stating that 'it was only known that he was about leaving a few days before he in fact did leave,' his attorney presumably speaks for himself alone, as he could not swear when it was *first* known to the defendant.

Again, there is nothing to show any expectation that he will ever return, or that his testimony can be procured at any future time. The authorities hold that such expectation should appear from the affidavit. *Shook v. Thomas*, 21 Ill. 87; *Richardson v. People*, 31 Ill. 170."

● 2   Here, the affidavit filed in support of defendant's motion was based upon a conversation between defendant and his attorney. It would seem, therefore, that defendant was able to communicate as to his recollection so that at some point after the petition was filed and before the trial date, his deposition could' have been taken. If in fact that were to prove too strenuous, Supreme Court Rule 210 (Ill. Rev. Stat. 1971, ch. 110A, par. 210) provides for the taking of depositions on written questions. The allowance of a continuance is committed to the trial court's discretion, the exercise of which is reviewable only where there has been an abuse thereof (*Griffith v. Young Men's Christian Ass'n*, 7 Ill.App.3d 1040, 288 N.E.2d 718). We find no abuse here.

## II.

■■■· Defendant next asserts that plaintiff's claim was barred by *laches* in that she waited some ten years before commencing her action. We note, initially, that a decree for alimony (herein a lump sum settlement) is a money decree and the 20-year statute of limitations applicable to judgments applies (Ill. Rev. Stat. 1971, ch. 83, par. 24(b); *Mueller v. Mueller*, 36 Ill.App.2d 305, 183 N.E.2d 887). Therefore, plaintiff's petition, though dilatory, was filed within the prescribed statutory period. However, *laches* can operate even though the statutory period has not tolled. (*Slatin's Properties, Inc., v. Hassler*, 53 Ill.2d 325, 291 N.E.2d 641.) We will therefore consider the cases cited by defendant and determine whether they are applicable to the facts as presented herein.

In *Gordon v. Baker*, 182 Ill.App. 587, alimony was not collected for a period of 30 years, and in addition, the plaintiff had remarried twice since her divorce and, although the decree gave her custody of their child, she never in fact took care of this child. The action was brought after defendant's death and the court held that *laches* barred her action because the long delay precluded the opportunity of defendant to raise valid defenses. *Brown v. Brown*, 108 So.2d 492 (Fla. App. 1959), involved eleven year delay before a petition for back alimony and interest was filed. There the wife expressly relinquished her right to collect alimony by pledging not to seek alimony if the husband would take their son into his business, which he did. The court found that *laches* barred her action and specifically determined that the husband was injured because, in reliance of his wife's relinquishment, he had remarried and disposed

of his interest in the business. In *Hamilton v. Hamilton*, 94 P.2d 127 (Col. 1939), plaintiff filed a petition for citation charging that defendant had disregarded his obligations to pay alimony. Plaintiff had waited 17 years to enforce the judgment for alimony and then did so by a contempt proceeding. The court determined that as to the contempt proceeding plaintiff was barred by *laches*. However, the court specifically refused to foreclose plaintiff's right to collect the back alimony. These and the other cases cited by defendant do not persuade us to adopt the line of reasoning suggested by him.

Application of the doctrine of *laches* depends on the circumstances of each particular case (*Pyle v. Ferrell*, 12 Ill.2d 547, 147 N.E.2d 341). The court in *Pyle* on page 553 stated:

"[A] suit is held to be barred on the ground of *laches* or stale demand 'where and only where' the following facts are disclosed: (1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit, and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred."

In *Kaifer v. Kaifer*, 286 Ill.App. 433, 3 N.E.2d 886, an action for the non-payment of alimony, the court, in response to defendant's argument that "after the year 1925 appellee made no demand upon appellant for any sum that might be due here under the former decree and that therefore having acquiesced in appellant's failure to pay until she filed her petition herein in October, 1935, she is guilty of such *laches* as will preclude her from obtaining any relief," stated on page 438:

" 'A court of equity will apply the doctrine to laches in denial of relief only where from all the circumstances to grant relief to which the complainant would otherwise be entitled will presumably be inequitable and unjust because of the delay' * * *. This decree was a continuing order and we are unable to say that its enforcement is inequitable or unjust."

We hold that defendant here has not suffered injury or prejudice as a result of plaintiff's delay in filing her petition. (*Gill v. Gill*, 8 Ill.App.3d 625, 290 N.E.2d 897.) Defendant was obligated, in the absence of a court order terminating such, to pay the $78,000, and the argument raised that defendant is injured because he might be forced to pay in one lump sum as opposed to the contemplated monthly installments is unimpressive.

When the settlement agreement was entered into, defendant was prepared to make these payments and there is nothing now in the record to indicate that he is no longer in this position. (See also 70 A.L.R.2d 1250.) ■■■ We agree, therefore, with the finding of the trial court in this regard and conclude that since defendant is unable to establish injury or prejudice, he cannot successfully interpose the defense of *laches* to bar plaintiff's claim. Whether a party has been guilty of *laches* is a question addressed solely to the sound discretion of the trial court, and its finding will not be disturbed upon review unless it is so clearly wrong as to constitute an abuse of discretion. *People ex rel. Heavey v. Fitzgerald,* 10 Ill.App.3d 24, 293 N.E.2d 705.

### III.

■■ Defendant argues next that plaintiff by her silence after 1961 is estopped from asserting her claim. "Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he [or she] is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse,* and who on his part acquires some corresponding rights." (Emphasis added.) (*Slavis v. Slavis,* 12 Ill.App.3d 467, 473, 299 N.E.2d 413.) In order to claim reliance, one must be able to establish that he has acted without knowledge of the truth of the matter represented to him. (*Brehm v. American Dental Ass'n,* 6 Ill.App.3d 33, 284 N.E.2d 317.) The facts herein do not present such a case. Defendant, after the September 1961 meeting acted with the knowledge that plaintiff contended she was not remarried. He could have initiated court action to have determined her marital status and his obligation under the decree. That he voluntarily chose to ignore her representation cannot now give rise to the interposition of the defense of equitable estoppel.

■■ Further, reliance on the conduct of another by a party to his detriment is an essential element of equitable estoppel. (*Levin v. Civil Service Com.,* 52 Ill.2d 516, 288 N.E.2d 97.) Here, as in defendant's argument regarding the defense of *laches,* he has failed to establish the detrimental reliance suffered as the result of plaintiff's conduct. Defendant, in fact, changed his position in that he made none of the payments required by the settlement agreement. However, his voluntary change of position was not one for the worse and, to the contrary, could be considered to have inured to his benefit for a period of ten years. His contention that his current illness is the type of 'change of position' or detriment contemplated by the doctrine of equitable estoppel is patently untenable. There is no indication that his illness was in any manner the conse-

quence of the plaintiff's conduct. Since the burden of proving estoppel is upon the party asserting it (*Forest v. Forest*, 9 Ill.App.3d 111, 291 N.E.2d 880) and since defendant has failed to affirmatively establish the requisite elements of the defense, we conclude that the defense of equitable estoppel is inappropriate here.

### IV.

Defendant next contends that plaintiff married Alfred Mattson and is thereby precluded from receiving any payments pursuant to section 2(c) of the settlement agreement. He takes this position in spite of the fact that plaintiff and Mattson testified that they never went through a marriage ceremony and that the marriage certificate received in evidence was forged by Mattson. Defendant argues that the mere securing of an application for a marriage license, considered with the fact they were living together as husband and wife, constitutes a "marriage" which although *voidable* is sufficient under the defeasibility provision of the settlement agreement to defeat plaintiff's claim for alimony. This argument, however, assumes that there was some effort by plaintiff and Mattson to marry.

In the cases cited by defendant for support of his contention, the parties involved undertook a course of conduct intended to culminate in marriage; here, plaintiff and Mattson simply lived together with no such intention. Marriage is a civil contract and like other contracts requires mutual consent of the parties thereto. (*De Vries v. De Vries*, 195 Ill.App. 4.) As between plaintiff and Mattson, as we view the record, there was no consent to be husband and wife. Assuming there was such consent, the best that could be said is that the parties entered into a common-law marriage which is expressly declared null and void by statute in this state (Ill. Rev. Stat. 1971, ch. 89, par. 4). Therefore, by defendant's failure to establish that plaintiff has remarried, he is, under the terms of the property settlement agreement, obligated to make the payments in accordance with its terms.

### V.

■■ Plaintiff, as appellant, claims that the trial court erred in denying her interest of $28,470 on the accrued installments. In support of this position, plaintiff refers to a number of cases which have held that interest is assessable on unpaid alimony and support payments. (See: *Pope v. Pope*, 2 Ill.2d 152, 117 N.E.2d 65; *Gregory v. Gregory*, 52 Ill.App.2d 262, 202 N.E.2d 139; *Simpson v. Simpson*, 4 Ill.App.2d 526, 124 N.E.2d 573; *Wadler v. Wadler*, 325 Ill.App. 83, 59 N.E.2d 505.) In these cases, however, the husbands charged with the non-payment refused to make pay-

ments without justifiable reason. Herein, after the 1961 meeting and because of plaintiff's subsequent silence and her apparent marital relationship with Mattson, defendant contends he had justifiable reason to believe that plaintiff had either remarried or was not going to pursue any claim for arrearage. We note that for some 10 years plaintiff abstained from making demands upon defendant, even though the record indicates she saw him on several occasions during that time. We have stated in this opinion that, in the absence of establishing some injury or prejudice as a result of plaintiff's conduct, defendant could not interpose the defense of *laches*. Here, however, as the result of plaintiff's conduct, defendant will suffer a substantial pecuniary loss insofar as the payment of interest is required. "The rule in equity is to allow interest where warranted by equitable considerations and to refuse such allowance when it does not comport with justice." *Kaifer v. Kaifer*, 286 Ill.App. 433, 3 N.E.2d 886. *Accord; Sutton v. Leib*, 199 F.2d 163 (7th Cir. 1952); *Anderson v. Anderson*, 48 Ill.App.2d 140, 198 N.E.2d 342.

In *Anderson*, where plaintiff petitioned for judgment in the amount of arrearage and interest thereon, the court said at page 147:

> "As to the plaintiff's prayer for interest and attorneys' fees, this is a matter within the sound discretion of the court."

In *Sutton*, the second marriage of a wife was declared void and she sued for the alimony she didn't receive during the second marriage together with interest and attorney's fees. She was awarded this past due alimony but was denied interest and attorney's fees. The reviewing court construed Illinois law to provide interest from the date each installment is due, especially "when resistance is wilful and deliberate and no sound reason exists for refusal to pay." The court further stated it could see no reason for applying such a rule "under the facts where defendant had every reason to believe that his obligation had come to an end under the terms of the decree which imposed it." In addition, the court in *Sutton* stated that plaintiff made no demand for installments accruing "between August 1944 and December 1947 until the filing of the suit in April 1950" and the court went on to say that under the circumstances of that case "it would be very inequitable to charge defendant with interest and counsel fees."

Here, because plaintiff held herself out to all but defendant that she and Mattson were married and because she made no demand for payments after her 1961 meeting with defendant until after her separation from Mattson in 1971, we conclude that defendant had justifiable reason to believe that his obligation under the decree had come to an end.

We are mindful of section 3, chapter 74, dealing with interest on judg-

ments. Under the circumstances here, we believe that the reasoning of *Kaifer, Anderson,* and *Sutton* should be followed and, in view thereof, we conclude that the trial court did not abuse its discretion in denying plaintiff's claim for interest. We affirm the judgment therein.

Affirmed.

DRUCKER and LORENZ, JJ., concur.