C. D. SHOCKLEY *et al.*, Plaintiffs-Appellants, *v.* RYDER TRUCK RENTAL, INC., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 78-1453

Opinion filed July 2, 1979.

90

James G. Meyer, of Smith & Munson, Ltd., of Chicago, for appellants.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Robert S. Soderstrom and Andrew Fylypovych, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, C. D. Shockley and Emily Shockley, filed an amended complaint on March 7, 1978, against defendants, Ryder Truck Rental, Inc., Azar Nut Company and James Schultz, alleging that on December 29, 1975, defendants Ryder Truck Rental, Inc. (Ryder) and Azar Nut Company (Azar Nut), by their agent and servant, Lawrence Hogsed, negligently drove a truck into the rear of plaintiffs' car. Plaintiffs also alleged in a separate count that later on the same day they were involved in a second accident in which defendant James Schultz negligently drove his car into the rear of their car. Ryder subsequently moved for summary judgment and Azar Nut moved to dismiss as to it. Both motions were granted and plaintiffs appeal. Plaintiffs' cause of action against Schultz is not before us on this appeal.

On December 29, 1975, plaintiffs were involved in an accident with a semi-trailer truck driven by Lawrence Hogsed. This truck bore the name "Ryder Truck Rental, Inc." On March 23, 1977, plaintiffs' attorney sent a notice of lien and a cover letter to Ryder. Shortly thereafter, plaintiffs' attorney received a letter dated April 4, 1977, from Associated Claims Service, Inc. (Associated Claims), signed by John S. Tasch. The letter was captioned:

"RE: C. D. Shockley and Emily Shockley vs.
Ryder Truck Rental, Inc. and Lawrence Hogsed
Accident: 12-29-75
Our File No.: A512-7919-M"

In this letter Tasch informed plaintiffs' attorney that Ryder "is self-insured" and that Associated Claims was Ryder's "Chicago Claims Representatives." Tasch further advised plaintiffs' attorney that Associated Claims acknowledged plaintiffs' letter and lien and interest and concluded, "[w]e will be glad to talk to you about this matter at your convenience."

On April 7, 1977, plaintiffs' attorney wrote to John Tasch. In the

caption, plaintiffs' attorney referred to Ryder as Associated Claims' "insured" and to James Schultz as Allstate's "insured." In the letter plaintiffs' attorney stated that on December 29, 1975, plaintiffs' car had first been struck by a Ryder semi-trailer driven by Lawrence Hogsed, and later was struck by a car driven by James Schultz, and included a list of the medical and repair bills incurred by the Shockleys as a result of the two accidents. Plaintiffs' attorney also suggested that before plaintiffs filed suit against Associated Claims' "insureds," an attempt to settle should be made regardless of any difficulty in apportioning liability for the damages.

On June 14, 1977, Tasch wrote plaintiffs' attorney. This letter was captioned:

"RE: Shockley -vs- Schultz and Ryder Truck Rental
Accidents: 12-29-75
Our File: A512-7919-M"

In the letter Tasch asked for advice concerning the possibility of settlement at a previously agreed figure of $6,000, $3,000 of which was to come from Ryder and $3,000 from Allstate on behalf of Schultz. Tasch in this letter further stated, "I would certainly hate to become involved in litigation solely because Allstate has refused to accept a reasonable or realistic attitude. If they are not in agreement, I would like to ask that you consider going back to the original agreement we had between us and permit us to avoid what we consider to be unnecessary litigation."

Plaintiffs failed to reach a settlement and filed suit on December 16, 1977, naming Ryder and Schultz as defendants. Plaintiffs alleged with respect to Ryder that on December 29, 1975, plaintiffs' car was negligently hit in the rear by a truck owned by Ryder and driven by Ryder's agent and servant, Lawrence Hogsed. On March 7, 1978, plaintiffs filed their amended complaint to include Azar Nut as a defendant, having learned that Azar Nut had leased the truck driven by Hogsed from Ryder and that Hogsed was actually an employee of Azar Nut.

On March 30, 1978, Ryder filed its motion for summary judgment, arguing that it could not be liable as a matter of law because there was no genuine issue concerning the fact that Hogsed was not its agent, employee or servant at the time of the accident. With its motion, Ryder filed an affidavit of the District Safety Manager for the Albuquerque, New Mexico District Office of Ryder Truck Rental, Inc. The affidavit stated that the vehicle operated by Hogsed had previously been leased to Hogsed's employer, Azar Nut, and that at the time of the accident with plaintiffs Hogsed was not an agent, servant or employee of Ryder, nor performing any activity at the request of or on behalf of Ryder. In addition, a copy of the lease agreement between Ryder and Azar Nut was

attached to the affidavit. It stated that during the term of the lease, it was Ryder's responsibility to provide liability insurance for accidents involving the truck in the amount of $100,000 per person for bodily injury and $300,000 per accident.

On April 11, 1978, Azar Nut moved to dismiss for the reason that, because the accident occurred on December 29, 1975, and Azar Nut was not made a party until March 7, 1978, plaintiffs' action was barred by the two-year statute of limitations. Ill. Rev. Stat. 1975, ch. 83, par. 15.

Plaintiffs filed a response to these motions, accompanied by the affidavit of their attorney. In his affidavit, the attorney stated that prior to the time plaintiffs filed suit against Ryder, he and Tasch not only exchanged the previously described correspondence, but he also had numerous telephone conversations with Tasch, "who at all times represented * * * that he was negotiating this matter on behalf of Ryder Truck Rental, Inc." Plaintiffs' attorney further stated that the first time he was told Azar Nut had leased the truck from Ryder and that Hogsed was Azar Nut's employee was when Tasch informed him of this in a telephone conversation after both the original complaint had been filed and the statute of limitations against Azar Nut had run. Plaintiffs' attorney also stated in his affidavit that in this conversation Tasch advised him that in view of the fact that Ryder was not responsible for the accident he should reduce his demand and settle the action. Defendants did not file a counteraffidavit.

Based on the affidavit of their attorney, plaintiffs argued to the trial court that Tasch either misled plaintiffs' attorney into believing Ryder Truck was the proper party to sue or that Tasch intentionally failed to correct plaintiffs' attorney's mistaken assumption until after the statute of limitations against Azar Nut had run. The trial court granted Ryder's motion for summary judgment and Azar Nut's motion to dismiss.

On appeal, plaintiffs argue that the summary judgment in favor of Ryder should be reversed because, under the facts appearing in the record, Ryder was estopped as a matter of law to assert the defense of lack of agency of Hogsed. Alternatively, they contend that the undisputed facts create a question of fact on the issue of estoppel which should be decided in the trial court.

■■ Summary judgment may be granted only when the pleadings, affidavits, exhibits and depositions on file show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) The purpose of summary judgment is not to try an issue of fact, but rather to determine whether a question of fact exists. (*Weber v. Northern Illinois Gas Co.* (1973), 10 Ill. App. 3d 625, 635, 295 N.E.2d 41.) Moreover, the pleadings, affidavits,

exhibits and depositions on file should be construed by the trial court strictly against the party moving for summary judgment and liberally in favor of the opponent, and summary judgment should be granted only when these items leave no doubt that such a verdict is justified. *Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346.

■■ ■ Plaintiffs contend that Ryder, because of Tasch's conduct, should be estopped as a matter of law from denying Hogsed was its servant. Alternatively, plaintiffs argue that at least a genuine issue of fact was presented with respect to whether Ryder should be estopped. Equitable estoppel has been defined as " 'the effect of the voluntary conduct of a party whereby he [or she] is absolutely precluded from asserting rights which might otherwise have existed as against another person who has, in good faith, *relied upon such conduct and has been led thereby to change his position for the worse,* and who on his part acquires some corresponding rights.' * * *" [Citation.] (*Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 210, 309 N.E.2d 632.) The conduct which may be grounds for estoppel can include both statements as well as silence, but in order to claim reliance on such statements or silence one must have acted without knowledge of the truth of the matter represented to him. *Atwater*, at 210; *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 795, 305 N.E.2d 236.

■■ We have carefully reviewed the record and disagree with plaintiffs that we should hold as a matter of law that Ryder is estopped from denying that Hogsed was its servant. We agree with plaintiffs, however, that they did at least present a genuine issue of fact on whether Ryder should be estopped. Although Ryder does not question the fact that Tasch's conduct may be imputed to Ryder, it does contend, however, that a party cannot be estopped unless he intended to mislead the party claiming estoppel (see *Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019) and that plaintiffs failed to raise an issue of fact concerning whether Tasch intended to mislead them.

In support of its position, Ryder points to its truck lease with Azar Nut, which made Ryder responsible for insuring against accidents. Ryder maintains that because it provided the insurance coverage, its insurance adjuster, Associated Claims, was obligated both to negotiate for Ryder and to defend Hogsed with respect to plaintiffs' claim. This fact, Ryder urges, explains Tasch's conduct vis-a-vis plaintiffs' attorney, and shows that Tasch's actions were not intended to be misleading. Ryder makes no claim, however, that plaintiffs knew of this lease or its terms concerning insurance.

■■ Although it is possible to infer from some cases that a person cannot

be estopped for conduct which was not intended to mislead the party claiming estoppel (*e.g., Stewart v. O'Bryan* (1977), 50 Ill. App. 3d 108, 365 N.E.2d 1019), other cases indicate that when a person apparently adopts a position which reasonably misleads someone into detrimental reliance, that person can be estopped from avoiding this apparent position, regardless of the intent of his actions, if to hold otherwise would have an unjust effect. (18 Ill. L. & Prac. §23 (1956).) For example, in *Cessna v. Montgomery* (1976), 63 Ill. 2d 71, 86, 344 N.E.2d 447, the supreme court stated that "[a] fraudulent intent is not necessary to estoppel. Although fraud is an essential element, it is sufficient that a fraudulent or unjust effect results from defendant's conduct." In *People ex rel. Russell v. Michigan Avenue Trust Co.* (1924), 233 Ill. App. 428, 431, the court said: "One may not maintain silence when it is his duty to speak, or claim the benefit of his own negligence to the injury of another. In such cases an estoppel will arise in favor of the party who otherwise would be defrauded or injured." Thus, a genuine issue concerning estoppel may be raised on the basis of negligent conduct, provided that a question of fact is presented both on whether the person sought to be estopped is claiming the benefit of his alleged negligent conduct, and whether that person could reasonably have foreseen that his conduct might mislead the party claiming estoppel into detrimental reliance.

■■ According to the affidavit of plaintiffs' attorney, Tasch (1) captioned his letter to plaintiffs' attorney as though Ryder was the prospective defendant and stated that Ryder was self-insured, (2) told plaintiffs' attorney both in telephone conversations and in his letters that he represented Ryder and was negotiating on Ryder's behalf, (3) in his letter of June 14, 1977, told plaintiffs' attorney that he was interested in a settlement, using phrases such as "I would hate to become involved in litigation" and "* * * permit us to avoid what we consider to be unnecessary litigation," and (4) waited until after plaintiffs had filed their complaint against Ryder and the statute of limitations had run against Azar Nut before informing plaintiffs' attorney that Ryder had the right not to be named as a defendant, because Ryder had leased the truck to Azar Nut and Hogsed was Azar Nut's employee. These facts, sworn to by plaintiffs' attorney and which must be accepted as true because Ryder filed no counteraffidavit (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457), presented an issue of material fact as to whether Tasch's conduct negligently misled plaintiffs into believing that Ryder was Hogsed's employer and as to whether Tasch intended to mislead them into suing Ryder instead of Azar Nut. It is clear that Ryder is not refusing to accept the benefit it received from Tasch's conduct.

■■ Ryder also argues that it had no duty to disclose to plaintiffs that Azar

Nut, and not Ryder, was Hogsed's employer and that, therefore, plaintiffs as a matter of law could not establish grounds for estoppel. In support, Ryder cites *Zanbetiz v. Trans World Airlines, Inc.* (1966), 72 Ill. App. 2d 192, 219 N.E.2d 98, for the rule that fraud cannot be established by showing nothing more than a person's failure to disclose, unless there was a confidential relationship between that person and the party claiming fraud, and cites *Jurek v. Smuczynski* (1965), 61 Ill. App. 2d 426, 209 N.E.2d 850, for the proposition that in order for silence to be grounds for estoppel, the party against whom estoppel is sought must have had a duty to speak. However, even in the absence of a confidential relationship, fraud may be based on a party's conduct consisting of a failure to disclose plus an affirmative statement or act which, together, misled the party claiming fraud. (*Millikin National Bank v. Shellabarger Grain Products Co.* (1944), 322 Ill. App. 189, 54 N.E.2d 392, *reversed on other grounds* (1945), 389 Ill. 196, 58 N.E.2d 892.) If this is true of fraud, then certainly it is true of estoppel: estoppel may also be based on conduct consisting of a failure to disclose plus an affirmative statement or act which, together, misled the party claiming estoppel.

In the affidavit of plaintiffs' attorney, Tasch was charged not only with failing to disclose to plaintiffs' attorney that Azar Nut, and not Ryder, was Hogsed's employer, but also with affirmative acts which misled plaintiffs: Tasch (1) captioned his letters to plaintiffs' attorney as though Ryder was the prospective defendant for Hogsed's accident, (2) told plaintiffs' attorney both in correspondence and in telephone conversations that he represented Ryder, and (3) in his letter of June 14, 1977, told plaintiffs' attorney that he was interested in a settlement, using phrases such as "I would hate to become involved in litigation" and "* * * permit us to avoid what we consider to be unnecessary litigation."

Moreover, with respect to estoppel and the relationship between silence and duty to speak, our supreme court has said, "[i]t is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain. [Citations.]" (*Bondy v. Samuels* (1929), 333 Ill. 535, 546, 165 N.E. 181.) Here, Tasch was charged with waiting until after plaintiffs had filed their complaint against Ryder and the statute of limitations had run against Azar Nut before informing plaintiffs' attorney that Ryder had the right not to be named as a defendant. Thus, plaintiffs also presented a question of fact concerning whether Tasch knew, or should have known, that plaintiffs intended to infringe on Ryder's right not to be named as a defendant but, nevertheless, by failing to assert this right encouraged plaintiffs to sue Ryder as Hogsed's employer. Ryder's argument that it had no "duty" cannot sustain the summary judgment in its favor.

■■ Ryder also argues that the summary judgment in its favor should not be reversed because Associated Claims and Ryder were not the only sources from which plaintiffs could have learned that Hogsed's actual employer was Azar Nut. While it is true that a party claiming estoppel cannot unreasonably ignore other means of learning the facts (*Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 795, 305 N.E.2d 236), there comes a time when a party is entitled reasonably to believe that no further investigation is necessary. According to the affidavit of plaintiffs' counsel, the truck driven by Hogsed bore the name "Ryder Truck Rental, Inc." It was because of this that plaintiffs' attorney initially contacted Ryder in determining potential liability. In view of the subsequent actions by Tasch, there is at least a question of fact concerning whether plaintiffs' attorney acted reasonably in relying on Tasch's conduct as evidence that Ryder was Hogsed's employer. There is nothing in the record to indicate that plaintiffs' attorney while negotiating with Tasch knew that Tasch's actions might have been the result of Ryder's lease with Azar Nut, which made Ryder responsible for insuring against accidents involving the truck.

■■ Finally, Ryder contends that plaintiffs did not raise a genuine issue on estoppel because they did not present a question of fact as to whether they had changed their position to their detriment in reliance on Tasch's conduct. Although it is true that to establish grounds for estoppel, a party must show that he changed his position to his detriment in reasonable reliance on the conduct of the person sought to be estopped, we disagree with Ryder that plaintiffs failed to raise a question of fact concerning this matter. On a summary judgment motion, the pleadings and affidavits of the party opposing summary judgment should be liberally construed. (*Century Display Manufacturing Corp. v. D. R. Wager Construction Co.* (1977), 46 Ill. App. 3d 643, 648, 360 N.E.2d 1346.) In the affidavit of plaintiffs' attorney he stated that if he had been informed that the responsible party was Azar Nut he would have joined them as a defendant in the original complaint. From this it is apparent that plaintiffs were claiming that they changed their position to their detriment by ceasing to investigate further Ryder's liability for Hogsed's accident in reliance on Tasch's conduct indicating that Ryder was Hogsed's employer and thus failed to name Azar Nut as a defendant before the statute of limitations had run. There is a genuine issue of material fact on the issue of estoppel with respect to whether plaintiffs changed their position to their detriment in reasonable reliance on Tasch's conduct.

Although plaintiffs appealed from the dismissal of Azar Nut, they have failed to address this issue in their brief. It is, therefore, waived. Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *Miller v. Police Board* (1976), 38 Ill. App. 3d 894, 349 N.E.2d 544.

The summary judgment for Ryder is reversed and the cause is remanded for an evidentiary hearing on the issue of estoppel in accordance with this opinion. The judgment dismissing Azar Nut is affirmed.

Reversed and remanded in part; affirmed in part.

GOLDBERG, P. J., and CAMPBELL, J., concur.