LINCOLNLAND PROPERTIES, INC., Plaintiff and Counterdefendant-Appellant, v. BUTTERWORTH APARTMENTS, INC., Defendant and Counterplaintiff (Ginkids Investments, Inc., Defendant and Counterplaintiff-Appellee).

Fourth District No. 4—84—0248

Opinion filed October 31, 1984.—Rehearing denied December 3, 1984.

Edward R. Green, of Gibbs & Green, P.C., of Springfield, for appellant.

Larry J. Ratzel, of New Berlin, Wisconsin, for appellee.

JUSTICE WEBBER delivered the opinion of the court:

This appeal (the third one between these parties) concerns the nature of an order entered in the circuit court of Sangamon County on November 13, 1975. The appeal lies from another order entered in the same court on December 27, 1983. The latter is intimately intertwined with the 1975 order. The current controversy is over the calculation of interest.

Some brief background information is necessary to a complete understanding of the case. A more complete recitation of the facts is found in the opinion emanating from the first appeal. (See *Lincolnland Properties, Inc. v. Butterworth Apartments, Inc.* (1978), 65 Ill. App. 3d 907, 382 N.E.2d 1250.) Ginkids Investments, Inc. (Ginkids), appellee here, is the successor in interest to the original owners of the rental properties and the holder of judgment notes of Lincolnland Properties, Inc. (Lincolnland), appellant here.

The basis of the original action, out of which the first appeal grew, was an agreement dated October 5, 1967. Under this agreement refinancing was to be obtained for certain rental properties owned by Lincolnland. In the event such refinancing could not be obtained by March 1, 1968, then the terms of the judgment notes, which were secured by the rental properties, were to be altered to provide that the notes would be paid solely from one-half of the net cash flow from the encumbered properties. The net cash flow was to be determined by Lincolnland's accountant. The agreement contained other provisions not pertinent here.

The refinancing efforts failed, and Lincolnland brought suit to enforce the 1967 agreement. Ginkids counterclaimed, seeking a money judgment on the notes, or, in the alternative, rescission of the sale of

the properties to Lincolnland. After a trial in the circuit court of Sangamon County, the trial court held that the notes were payable in accordance with the terms of the 1967 agreement, and this court affirmed that portion of the trial court's judgment.

The portion of the trial court's order, dated November 13, 1975, pertinent to the instant appeal provides:

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as to the Amended Counter-Complaint as follows:

1. The Counterplaintiff [Ginkids] have of and from the Counterdefendant [Lincolnland] the sum of Sixty Thousand Dollars ($60,000.00) with interest at the rate of six percent (6%) per annum from October 24, 1968, on the note of Lincolnland Properties, Inc. to Butterworth Apartments, Inc. [Ginkids' assignor] and it is the further Order of the Court that the said note was not due and payable until May 22, 1975, and said payment shall be made under the terms and conditions of the Agreement dated October 5, 1967.

The Counterplainiff have of and from the Counterdefendant the sum of One Hundred One and 26/100ths Dollars ($101.26). [This amount represents a debt of an interior decorating firm which Lincolnland assumed pursuant to its purchase agreement.]

It is the further Order of this Court that the Counterplaintiff take nothing from the Counterdefendant on the remaining issues in Count I [the count relating to the monies at issue in this appeal.]"

A second appeal between these parties concerned the meaning of the term "net cash flow." It is not an issue in the instant appeal. *Lincolnland Properties, Inc. v. Ginkids Investment, Inc.* (1982), 108 Ill. App. 3d 1221, 446 N.E.2d 324 (Rule 23 order).

On December 27, 1983, Lincolnland filed a petition in the circuit court of Sangamon County seeking release of judgment and judgment lien with respect to a $60,000 note secured by a rental property known as "Moline 42." Lincolnland made a tender of $87,690.16, which it calculated was the amount due on that note. Ginkids objected and asserted that the proper amount due was $99,838.36. The trial court held that the tender was inadequate and denied Lincolnland's petition. This appeal followed.

The positions of the parties are relatively straightforward. Their disagreement is over the nature of the 1975 order.

Lincolnland claims that the 1975 order was a declaratory, not a money, judgment. It therefore calculated its tender by applying the in-

terest rate called for in the note (6%) to the $60,000 principal, for the period of time that Ginkids was entitled to interest under terms of the order.

Ginkids, on the other hand, claims that the 1975 order was a money judgment. It arrives at its calculation by applying the contract rate of interest (6%) to the principal of $60,000 from 1968 to 1975, and the statutory rate (9%) thereafter to the amount of principal and interest due as of the date of the 1975 order.

The parties assert various arguments in support of their respective positions. Lincolnland points out that the order of 1975 does not contain the usual verbiage of a money judgment; i.e., it does not require immediate payment plus accrued interest. It also calls attention to the separate item of $101.26, which it admits is a money judgment, but asserts that if the court intended the entire order to be so, it would have combined the items. It also maintains that it obtained declaratory relief and that it would have been inconsistent for the trial court to grant it the benefits of the 1967 agreement (payment from net cash flow) and at the same time require immediate payment of the entire sum.

Ginkids argues that it filed a counterclaim in the 1975 suit which was essentially an action for a money judgment, and since Lincolnland made no response other than general denials, the suit was then converted to one for a money judgment, notwithstanding the declaratory nature of the original complaint. Ginkids also reasons that the 1975 order is in essence an installment payment method of a money judgment. In a supplemental brief, Ginkids argued that in another order of May 6, 1981, dealing with a dispute of the same parties over other properties, the order of November 13, 1975, is referred to as a "judgment"; accompanying the May 1981 order was a partial satisfaction of *judgment* which was prepared by Lincolnland's counsel; all this, Ginkids maintains, shows that the parties regarded the 1975 order as a money judgment. In reply, Lincolnland points out that the properties involved in the 1981 order were not subject to the 1967 agreement; it admits that the 1981 order was a money judgment, but claims it was a different proceeding on different properties and thus cannot affect the portion of the 1975 order at issue.

Interest on judgments is a creature of statute. The rationale for post-judgment interest is to allow the judgment creditor compensation for the improper withholding of the amount of the judgment by the judgment debtor. *First National Bank & Trust Co. v. Aluminum Coil Anodizing Corp.* (1980), 86 Ill. App. 3d 842, 408 N.E.2d 477.

No case involving the precise situation here has been called to our

attention, nor has our own research disclosed any authority on all fours. As we have indicated, we view the question to be: Is an order which directs the payment of a sum upon the happening of an event, or events, which might, or might not, occur, a "judgment" within the meaning of the interest provisions of the Code of Civil Procedure? Ill. Rev. Stat. 1983, ch. 110, par. 2—1303.

■■ An examination of the various cases dealing with interest awarded on various types of judgments indicate that two principles are at work: (1) the amount of money to be paid must be certain, and (2) the judgment debtor must have enjoyed the improper use of the money during the period for which interest is awarded.

■■ In equitable actions it has been held that post-judgment interest should be awarded when supported by equitable considerations, but should not be awarded when it would "not comport with justice." *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 212, 309 N.E.2d 632, 640.

In applying these principles to the instant case, we find that the trial court was in error. Under the terms of the 1967 agreement, which this court held was binding on the parties, no payment was due on the Lincolnland-Butterworth Apartments note until the encumbered properties developed a net cash flow. If no cash flow had ever developed, the note would never have become due. There is no evidence in the record that the Moline 42 property had a net cash flow prior to the order of November 1975, nor is there any evidence that Lincolnland failed to pay Ginkids any amounts due under the 1967 agreement when the property subsequently did develop a cash flow.

■■ It follows that the principles set forth above were not met. There was no amount certain, and Lincolnland did not improperly withhold any funds. Although a declaratory judgment, which is the mold in which the litigation started, is not precisely pigeonholed as either a legal or equitable proceeding, we believe that equitable principles apply, and it would not comport with justice to allow Ginkids' theory of recovery. (*Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 309 N.E.2d 632.) Ginkids' contention that its counterclaim converted the action to a purely legal one is frivolous. We note in passing that the counterclaim ended up asking for "such other relief as in the premises the court deems just." This is the traditional language of chancery.

In summary, the order of November 13, 1975, has none of the salient characteristics of judgments on which interest is normally allowed, and there is no evidence that Lincolnland did not make payments as they became due under the terms of the order.

The order of the circuit court of Sangamon County is therefore reversed and the cause is remanded to that court with directions to enter a new order providing in substance: (1) directing payment under the November 13, 1975, order as to count I of Ginkids' counterclaim by payment from Lincolnland to Ginkids of its tender of $87,690.16; (2) releasing all liens attributable to said count I; (3) directing Ginkids to execute and deliver to Lincolnland appropriate releases as to count I of its counterclaim.

Reversed and remanded with directions.

MILLS, P.J., and GREEN, J., concur.