GEORGE BUTKOVICH & SONS, INC., Plaintiff-Appellee, *v.* STATE BANK OF ST. CHARLES, Trustee, *et al.*, Defendants-Appellants.

Second District  No. 76-581

Opinion filed August 3, 1978.

Donovan, Atten, Mountcastle, Roberts & DaRosa, of Wheaton, for appellants.

Marsh & Marsh, of Wheaton, for appellee.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

George Butkovich & Sons, Inc., building contractors, filed suit to foreclose a mechanics lien for work performed on defendant Hubert Grane, Jr's home at 33 Mockingbird Lane, Oak Brook, Illinois.

On May 16, 1969, the parties entered into a contract under which plaintiff would provide and perform the following:

"Excavating, backfilling, no hauling, concrete, caissons, caisson

rebars, masonry $70/M, steel, gravel for drive, flat work, fibre glass water proofing, glass blocks, cleaning, basement windows, install under ground garbage cans furnished by owner, meet grade provisions according to Oakbrook standards, chimney.

Concrete mortar for brick sills.

Rear patio square footage as per plan—shape to be decided by owner."

The contract further provided:

"WE [plaintiff] PROPOSE to furnish labor and material—complete in accordance with above specifications, and subject to conditions found on both sides of this agreement, for the sum of Nineteen thousand two hundred ninety—dollars ($19,290.00)

Payment to be made as follows:

$10,000 upon completion of foundation and delivery of brick

$5,000.00 upon completion of brick work

Balance 30 days after completion of contract."

Defendant paid the first $10,000 due on the contract but subsequently disputes arose concerning plaintiff's performance; no further payments were made and plaintiff then commenced this action in which it claims the balance of the contract price plus payment for extras. Following a bench trial, the trial court found in favor of plaintiff and against defendant and awarded plaintiff $10,000 in damages. Defendant appeals.

Defendant contends that the finding of the trial court that plaintiff has substantially performed under the contract was contrary to the manifest weight of the evidence. We agree and reverse and remand this case for a new trial.

■■ The ordinary rule applied in cases involving building contracts is that a builder is not required to perform perfectly, but rather, he is held only to a duty of substantial performance in a workmanlike manner. (*Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270.) The purchaser who receives substantial performance of the building contract must pay the contract price less a credit as compensation for any deficiencies existing in what he received as to what strict performance would have given him. *J-M Builders v. McIntyre* (1978), 56 Ill. App. 3d 714, 372 N.E.2d 420.

■■ On the other hand, a contractor whose work amounts to less than substantial performance has no right to the contract price; in that situation, the builder's right is, under a theory of quantum meruit, a right to recover only reasonable compensation for value received by the purchaser over and above the injury suffered by the builder's breach. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 356 N.E.2d 565.) What will be considered substantial performance of a building

contract is difficult to define and whether substantial performance has been given will depend on the relevant facts of each case. (*Brewer v. Custom Builders Corp.*) We shall therefore proceed to examine those facts in connection with this case.

Turning first to the omissions from the contract as alleged by defendant, it is undisputed that plaintiff failed to install water stops. According to plaintiff, a water stop could be caulking or a solid material poured up against a wall with fresh concrete; according to defendant, a water stop is a piece of usually vinyl material, nonporous in nature that is placed in between the cement floor and the foundation wall. The parties in general did agree that the purpose of water stops is to prevent water from coming in.

While admitting that the water stops were not installed, plaintiff argues that the contract makes no reference to water stops, that water stops are mentioned only in the specifications for the house. Further, that there was no testimony that the absence of water stops contributed to the water in defendant's premises.

While the trial court found nothing in the evidence to show that defendant's water problem was proximately caused by the lack of water stops, the real question here is whether plaintiff did comply with the terms of the contract. The contract itself does not enumerate that water stops were to be installed; however, the contract here, which is set out above, is in quite general terms and would be difficult, if not impossible, to carry out without the use of the specifications, which, according to plaintiff, did require the installation of water stops. Further, the supplemental conditions provide in part:

> "The contract and documents shall consist of the specifications, the drawings, the proposal form and the Owner-Contractor Agreement. * * *"

Finally, there was testimony that prior to entering into the contract, the parties held lengthy discussions on the potential water problem in connection with the plans and specifications for defendant's residence.

Defendant contends that while the plans called for the installation of wire mesh and reinforcing wire under all floors, plaintiff failed to install reinforcing wire mesh in the basement floor. Plaintiff argues that the reinforcing mesh, like the water stops, was not mentioned in the contract, and that defendant offered no testimony that any damage was suffered as a result of such an omission. However, John Butkovich, supervisor for plaintiff, testified that page three of the specifications calls for reinforcing wire; it was placed in the garage floor, but he did not know about the basement floor; as a rule they do not put it in the basement floor.

Next, defendant contends that plaintiff failed to recess the glass blocks. Butkovich testified that the plans did call for a four-inch recess of the glass

blocks, but that he was unable to do so because the carpenter had placed studs in the drywall in such a way that the glass blocks could not be recessed. However, he also stated that he did not believe he had called this to the defendant's attention.

The plans also called for the installation of underground garbage cans, which were never installed. According to plaintiff, defendant had obtained the wrong sized cans and told plaintiff he would contact plaintiff to finish up the work, which defendant never did.

Defendant also alleged instances of the poor quality of plaintiff's workmanship. Defendant contends that a particularly serious error was plaintiff's failure to comply with the plans supplied by defendant's structural engineer, A. C. Alexander.

Alexander testified that the plans called for the defendant's residence to be set one foot above the floor elevation of the existing residence at 31 Mockingbird Lane; no ambiguity existed in the plans. According to Alexander, it is customary to "site" elevations from a fixed point called a bench mark. The engineer should set up the relationship at one point, and a point in the new construction. A contractor could establish an elevation by using the curb mark in the street, but as it is not a definite point in the street it would have to be checked; a more definite point given on the drawing would be the elevation of the adjoining building which gives the finished floor elevation.

Donald Smith, a licensed surveyor who surveyed the property for defendant, testified that he found the defendant's residence to be 8 7/8" below the level required in the plans and only 3" higher than the adjoining residence.

Carl Krolick, also a licensed surveyor, testified for plaintiff that the elevation of defendant's residence agreed with the plans. Defendant's plans called for the finished floor of his residence to be 2½' above the existing curb; according to Krolick's survey of the premises the finished floor is 2' 7 ⅛" above the curb which makes it 1½" higher than called for in the plans. However, Krolick showed the neighboring residence at 31 Mockingbird Lane to be 2' 4¾" higher than the curb; thus defendant's residence would not be 1' higher than the adjoining residence as defendant had desired.

On cross-examination, Krolick testified that the elevation of the subject residence depends on what the fixed elevations are and what assumptions are made as to where the floor levels are. Defendant's plans called for an assumed elevation on the curb at 100 and the floor elevation of the adjoining residence at 31 Mockingbird Lane at 101.50; if you are going to assume the bench mark on the curb or if you are going to assume the bench mark on the floor, they are two different things and you would come up with two different answers. According to Krolick, he would have

"shot" the difference for a check and then called the architect and told him that there was a discrepancy and ask how he should proceed.

John Butkovich testified that he used only the assumed bench mark at the curb for all the elevations; he determined it was the true bench mark because it was on the plans. While he testified that there was no conversation at any time regarding the use of 31 Mockingbird Lane as a finished floor elevation, he also stated that he did have some discussion with the defendant regarding the finished floor elevation of 31 Mockingbird Lane with reference to the finished floor elevation of defendant's residence.

There was also testimony that there were cold joints and honeycombs in the concrete. A honeycomb is a space not filled with concrete, and a cold joint is formed when the concrete has set before a new batch is deposited. John Butkovich testified that he did correct some honeycomb surfaces in defendant's basement; however, there were one or two cracks in the north wall of the basement.

While defendant has alleged additional instances of plaintiff's poor workmanship in the construction of his residence, it would unnecessarily prolong this opinion to discuss them.

The omissions of the contract complained of by defendant were admitted by plaintiff. While arguing that the water stops and the reinforcing wire were not part of the contract, plaintiff admitted they were part of the specifications which are a necessary part of the contract. While the failure to install the underground garbage cans should not, under the evidence, be attributed to a fault on the part of plaintiff, the evidence showed that plaintiff failed to advise defendant of his inability to properly recess the glass blocks.

The testimony concerning the plans with regard to the elevation of defendant's home was conflicting; however, even accepting plaintiff's argument that the plans were ambiguous, plaintiff's own surveyor testified that in such a situation any discrepancy should be brought to the attention of the architect.

■■ Thus, considering the omissions from the contract, coupled with the evidence of the poor quality of the workmanship as outlined above, this court is of the opinion that the finding by the trial court that plaintiff substantially performed its contract with defendant is against the manifest weight of the evidence.

Therefore, the decision of the circuit court of Du Page County is reversed and the cause remanded for a new trial.

Reversed and remanded.

SEIDENFELD, P. J., and RECHENMACHER, J., concur.