ROBERT BUCZAK, Plaintiff-Appellant, v. CENTRAL SAVINGS AND LOAN ASSOCIATION, Under Trust No. 81088, *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—1717

Opinion filed May 26, 1992.

Fishman & Fishman, Ltd., of Chicago (Ronald S. Fishman, of counsel), for appellant.

Fraterrigo, Best & Beranek, of Chicago (Gary M. Feiereisel, of counsel), for appellee Central Savings & Loan Association.

Williams & Montgomery, Ltd., of Chicago (Barry L. Kroll, James K. Horstman, Diane M. Paserba, and Lloyd E. Williams, Jr., of counsel), for appellee A. Willard Longenecker.

No brief filed for appellees Pedro Vasquez and Julie M. Vasquez.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff Robert Buczak appeals from an order of the circuit court of Cook County which granted summary judgment to defendant Central Savings and Loan Association (Central) and dismissed on limitations grounds the action against defendant A. Willard Longenecker (Longenecker). Buczak seeks reinstatement of his suit against both defendants. For the reasons that follow, we reverse the grant of summary judgment to Central and affirm the dismissal of Longenecker.

On April 9, 1985, plaintiff filed this action for personal injuries which he sustained on April 9, 1983. The complaint alleged that plaintiff was visiting a tenant at a two-flat building in Chicago (the property) when a raised, front porch bannister upon which he was leaning collapsed. Named as defendants were, among others not relevant here, Central, Pedro and Julie Vasquez, and "unknown owners and unknown renters." Plaintiff alleged that these defendants, as "owners and occupants of the building," owed plaintiff a duty of care regarding the maintenance of the property. Central answered the complaint admitting an "ownership interest" in the property on the day of injury but denied the remaining allegations. The Vasquezes' answer denied having an ownership interest in the property on the day of injury.

On March 4, 1986, Central filed a third-party complaint against Longenecker alleging that Longenecker was a contract purchaser of the property pursuant to an installment contract dated November 12, 1981. Central sought contribution and indemnification from Longenecker in the event that Central was held liable for plaintiff's injuries. Longenecker, in response to Central's discovery, admitted the terms of the contract and being in possession of the property since November 1981.

On August 5, 1987, Central moved for summary judgment against plaintiff asserting that, under Illinois law, because it was merely a

contract seller and not in possession and control of the property on the injury date, it owed plaintiff no duty. On September 11, 1987, 18 months after Central filed its third-party complaint, plaintiff filed an amended complaint which added Longenecker as a party defendant. Longenecker subsequently filed a motion to dismiss plaintiff's amended complaint alleging that the applicable two-year statute of limitations period had passed.

Plaintiff responded to defendants' motions by directing the circuit court to (1) paragraph 7 of the installment contract, (2) the affidavit of his attorney, Mark Levin, and (3) Longenecker's deposition testimony. Plaintiff alleged that these matters precluded the entry of summary judgment and dismissal on limitations grounds.

Regarding paragraph 7, plaintiff claimed summary judgment was not proper as this paragraph established Central to be both legal and equitable owner of the property. Paragraph 7 provided:

> "No right, title or interest, legal or equitable, in the premises, or any part thereof, shall vest in Purchaser until delivery of the deed aforesaid by Seller, or until the full payment of the purchase price at the times and in the manner herein provided."

Regarding Levin's affidavit and Longenecker's deposition testimony, plaintiff claimed summary judgment and dismissal were not proper because equitable estoppel should estop Central from denying that it did not own the building on the day in question and prevent Longenecker from asserting a limitations defense.

In Levin's affidavit, Levin stated that, after being retained by plaintiff in April 1983 and prior to filing suit, he sent a private investigator to the premises to ascertain whether any signs of ownership existed. The investigator was unable to find any signs of ownership. Levin stated he then conducted a title search of the property and found Central to be the record owner of title, with Pedro and Julie Vasquez having some unknown interest in the property. No installment contract was recorded.

Levin stated that during April 1983, he telephoned Central and talked to a bank officer who acknowledged that Central owned the property. The officer refused to divulge any further information, stating: "You can find what you want in the Recorder's office. I'll let you find it out." Levin also telephoned Pedro Vasquez, who informed Levin that the Vasquezes had quitclaimed their interest in the property to Central in December 1981. Vasquez informed Levin that, prior to the conveyance, Central was informed that the front stairs were in poor condition.

Levin asserted that he also attempted to determine ownership by checking with the city of Chicago's Department of Inspectional Services. Levin learned that on September 20, 1982, the city mailed a notification to the Vasquezes of numerous building code violations, including ones pertaining to the front porch.

Levin stated that on June 23, 1983, he mailed a notice of attorney's lien to Central and the Vasquezes. On August 31, 1983, Levin received a letter from Michael Boyle of Raymond Bandrigna and Associates, Inc. (Bandrigna), a claims insurance adjusting company, indicating that it represented Home & Auto Insurance Company and that Central was its insured. Boyle requested complete hospital and medical records and that plaintiff sign the enclosed consent form.

Levin stated that he received more letters from Bandrigna dated October 21, 1983, December 16, 1983, February 23, 1984, May 22, 1984, July 17, 1984, and October 3, 1984. Each of these letters was similar in content to the letter of October 21, 1983. Levin received a different letter from an Atlantic Companies' claims supervisor on June 13, 1985. This letter contained a caption naming Central as a prospective defendant and requested medical and lost wage information necessary to the proper evaluation of the case.

Levin further stated that he had several telephone conversations with Boyle. Boyle indicated to Levin that he was adjusting the matter for Central as owners of the property and that he needed certain information regarding plaintiff's injuries. Levin concluded his affidavit by stating that at no time did anybody indicate the existence of the installment contract or that Longenecker had any interest in the property.

As for Longenecker's deposition testimony, Longenecker testified that he was the owner of a real estate company and also a broker. Longenecker testified that an officer at Central told him that Central had purchased the property at a foreclosure sale and that Longenecker could purchase it with no money down under an installment contract. Longenecker decided not to record the agreement as he did not want to place a cloud on the title and because Central was a trustworthy savings and loan. Longenecker testified that the only knowledge he had of the suit was when Central mailed him Levin's notice of attorney's lien. Longenecker sent this correspondence to his insurance agent.

On December 1, 1987, Judge Sodaro of the circuit court granted Longenecker's motion to dismiss plaintiff's amended complaint. The court rejected plaintiff's arguments that Longenecker had been timely sued as an "unknown party" pursuant to section 2—413 of the Code

of Civil Procedure (the Code) (Ill. Rev. Stat. 1987, ch. 110, par. 2—413) and that equitable estoppel should bar Longenecker from asserting the statute of limitations as an affirmative defense. The court, however, denied Central's motion for summary judgment, believing that a genuine issue of material fact existed on the issue of whether equitable estoppel precluded Central from asserting it was not in possession and control of the property. In denying Central's motion, the court noted that future facts could impact its ruling and make the estoppel issue purely one of law.

After taking the deposition of Mark Levin, Central again moved for summary judgment on July 6, 1989. The case at this time was before Judge Hoffman. Hoffman considered Central's motion to be nothing more than a motion for reconsideration because Central could direct Hoffman to no facts in Levin's deposition which Judge Sodaro had not already heard. Hoffman entered an order directing that the case be sent back to Judge Sodaro.

After the case was transferred back to Judge Sodaro, Central filed a third motion for summary judgment. Plaintiff filed a motion to strike Central's motion and also the affidavit of Myles Cunat, an attorney with Chicago Title & Trust Company. Cunat opined in his affidavit that Levin's verification of Central's ownership with the Cook County recorder of deed's office and his reliance upon his findings were reasonable and justified.

On May 23, 1990, Judge Sodaro granted Central's third motion for summary judgment. The court was persuaded by the new information in Levin's deposition that he never visited the premises to talk to any of the tenants to determine to whom they paid rent. Sodaro opined that it was unreasonable as a matter of law to sue the bare title holder of the property without checking who occupied the premises. Accordingly, because Central was a mere installment contract seller and not in possession and control of the property, the court entered summary judgment for Central.

Plaintiff appeals the granting of Central's summary judgment motion and Longenecker's motion to dismiss. Plaintiff alleges: (1) paragraph 7 of the installment contract requires that summary judgment to Central be denied as it demonstrates Central to be the "owner" of the building or at least raises an issue of fact on the issue; (2) a genuine issue of material fact exists regarding whether equitable estoppel prevents Central from denying ownership and Longenecker from raising the statute of limitations as an affirmative defense; (3) the statute of limitations does not apply to Longenecker as he was timely sued as an "unknown owner" pursuant to section 2—413 of the Code (Ill. Rev.

Stat. 1987, ch. 110, par. 2—413); and (4) the "discovery rule" and section 13—215 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 13—215), which pertains to fraudulent concealment of a lawsuit, preclude the application of the statute of limitations.

The parties in this case dispute neither the facts as previously set forth nor the applicable law. Rather, the parties dispute what result is required when the law is applied to the facts. Central maintains that summary judgment is proper because, under Illinois principles of premises liability law, liability follows possession and control, not bare ownership. Accordingly, Central asserts that, because it was only an installment contract seller on the day of injury and not in possession or control, it owed plaintiff no duty. Regarding Longenecker, he maintains that summary judgment was proper because, while he had possession and control at the time of injury, plaintiff failed to timely file suit against him.

Plaintiff responds to defendants' argument by admitting that under the common law, the duty to maintain the premises rested with Longenecker, not Central. Plaintiff, however, asserts that the conduct of both Central and Longenecker in this case raises a question of fact as to whether: (1) Central should be equitably estopped from asserting an ownership status inconsistent with full ownership, namely, that it is a mere installment contract seller; and (2) Longenecker should be equitably estopped from asserting the statute of limitations defense. Plaintiff additionally responds that paragraph 7 of the installment contract alters the application of premises liability principles under the common law. Plaintiff finally asserts various other matters which he claims defeat the propriety of Longenecker's dismissal.

Summary judgment shall be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) While the use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and therefore should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871.) In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

■ In this case, we must initially agree with the parties' recitation of the law relative to premises liability. As our cases have noted, liability in tort arising out of a defect in real property hinges on possession and control, not mere ownership. (*Conway v. Epstein* (1964), 49 Ill. App. 2d 290, 200 N.E.2d 16; *Koehler v. Southmoor Bank & Trust Co.* (1963), 40 Ill. App. 2d 195, 189 N.E.2d 22; *Porter v. Miller* (1960), 24 Ill. App. 2d 424, 164 N.E.2d 601; 28 Ill. L. & Prac. *Negligence* §81 (1957) (and cases cited therein).) Accordingly, an installment contract seller is not ordinarily liable for personal injuries sustained subsequent to his transfer of possession and control. *Anderson v. Cosmopolitan National Bank* (1973), 54 Ill. 2d 504, 301 N.E.2d 296; *Maisenbach v. Buckner* (1971), 133 Ill. App. 2d 53, 272 N.E.2d 851.

In an attempt to avoid the generally accepted rules of law noted above, plaintiff directs this court to paragraph 7 of the installment contract, which provides that Longenecker would receive neither equitable nor legal title until Central delivered a deed or until Longenecker made full payment. Plaintiff contends a genuine issue of material fact exists on the issue of ownership, and consequently duty, because this provision, in essence, returns to Central what the common law has taken away. We disagree.

In *Anderson* (54 Ill. 2d at 505-06, 301 N.E.2d at 297), a tenant of an apartment building brought suit against, *inter alia*, the sellers of the building under an installment contract for personal injuries sustained from a defect in the building's interior. Plaintiff's claim theorized that the defect existed prior to the date of the contract, that the sellers knew of the defect, and that they negligently failed to keep the property in safe repair. Under the installment contract, title would not be conveyed until all installment payments were made, and the sellers retained the right to make repairs and insure the property if the purchasers failed to do so. *Anderson*, 54 Ill. 2d at 505-06, 301 N.E.2d at 297.

In affirming summary judgment for the sellers, the court reiterated the general rule that "an ordinary vendor of real property is not liable for personal injuries which are sustained subsequent to his transfer of possession and control." (*Anderson*, 54 Ill. 2d at 507, 301 N.E.2d at 298.) The court also rejected plaintiff's argument that, because installment contract sellers retain significant rights under most installment contracts, they should be subjected to a different and more strict liability than that imposed upon other vendors. *Anderson*, 54 Ill. 2d at 507, 301 N.E.2d at 298-99.

■ We believe *Anderson* is dispositive of plaintiff's argument that paragraph 7 of the installment contract created a genuine issue

of material fact. Although the installment contract in *Anderson* is not set forth entirely in the opinion, Central in this case does not appear to have any more rights under its installment contract than did the installment contract seller in *Anderson*. Consistent with *Anderson*, we too will not impose a higher standard of liability on Central merely because it retained certain rights under the contract. See also *Marcon v. First Federal Savings & Loan Association* (1978), 58 Ill. App. 3d 811, 813, 374 N.E.2d 1028, 1030 ("only a mortgagee exercising dominion and control over the mortgaged property can be held responsible for damages to third parties caused by unsafe conditions on the property").

■■ We now focus on the application of equitable estoppel to this case. "Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights which might otherwise have existed as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right." 18 Ill. L. & Prac. *Estoppel* §22 (1956).

■■ In *Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 162-63, 533 N.E.2d 885, 890, *cert. denied* (1989), 492 U.S. 907, 106 L. Ed. 2d 568, 109 S. Ct. 3218, our supreme court reiterated the six elements of equitable estoppel: (1) defendant undertook words or conduct that amounted to a misrepresentation or concealment of material fact; (2) defendant knew or had reason to know the falsity of his misrepresentation or concealment; (3) plaintiff did not know or have reason to know that defendant's misrepresentation or concealment was false when made or acted upon; (4) defendant intended or reasonably expected that plaintiff would detrimentally rely on defendant's misrepresentation or concealment; (5) plaintiff's detrimental reliance was reasonable and in good faith; and (6) plaintiff would be prejudiced if defendant were permitted to avoid the falsity of his misrepresentation or concealment.

In this case, although not artfully articulated, we interpret plaintiff's estoppel argument as attempting to bar Central from asserting an ownership status inconsistent with full ownership. So interpreted, we believe plaintiff's estoppel argument has merit as against Central.

In *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 91-93, 392 N.E.2d 675, 676-77, a case upon which plaintiff heavily relies, the plaintiffs were injured on December 29, 1975, when their vehicle was rear-ended by a semitrailer truck driven by Lawrence Hogsed. The truck bore the name "Ryder Truck Rental, Inc." On

March 23, 1977, plaintiffs' attorney sent a notice of attorney's lien and cover letter to Ryder. Shortly thereafter, plaintiffs' attorney received a letter dated April 4, 1977, from Associated Claims Service, Inc. (Associated Claims), signed by John Tasch. The caption of the letter provided: "RE: C. D. Shockley and Emily Shockley vs. Ryder Truck Rental, Inc. and Lawrence Hogsed." Tasch stated in the letter that Ryder was "self-insured," that Associated Claims was Ryder's "Chicago Claims Representative," and that Associated Claims would be glad to talk about the matter.

Plaintiffs' attorney wrote Tasch on April 7, 1977, and referred to Ryder as Associated Claims' insured. The letter briefly described how Hogsed had driven Ryder's truck into plaintiffs' car and included plaintiffs' medical and property damage bills. Plaintiffs' attorney suggested that an attempt to settle should be made before suit was filed.

Tasch responded with a letter on June 14, 1977, which contained a similar caption and discussed specific settlement numbers. In the letter, Tasch hoped that litigation could be avoided.

Plaintiffs failed to reach settlement and filed suit against Ryder on December 16, 1977. Plaintiffs' complaint alleged that Ryder's liability was predicated on Hogsed's agency relationship with Ryder. On March 7, 1978, three months after the passing of the two-year limitations period, plaintiffs filed an amended complaint which included Azar Nut as a defendant. At the time of the accident, and unbeknownst to plaintiff until after the limitations period had expired, Azar Nut was leasing the truck from Ryder, and Hogsed was actually an employee of Azar Nut. Subsequently, Ryder moved for summary judgment and Azar Nut moved to dismiss on limitations grounds. These motions were granted.

On appeal, plaintiffs asserted that summary judgment should be reversed because a genuine issue of material fact existed as to whether Ryder should be equitably estopped from asserting that Hogsed was not its agent. The appellate court agreed, and reversed and remanded for an evidentiary hearing on the issue of equitable estoppel.

In its analysis, the court discussed at length the doctrine of equitable estoppel, its elements and how they applied to the facts of the case. We find three statements of law from *Shockley* particularly instructive here.

■ First, fraudulent intent is not necessary to estoppel. Rather, estoppel is appropriate against a person who adopts a position which reasonably misleads someone into detrimental reliance, regardless of

the intent of his actions, if to hold otherwise would have an unjust effect. *Shockley*, 74 Ill. App. 3d at 95, 392 N.E.2d at 678.

■ Second, even in the absence of a confidential relationship, estoppel may be based on conduct consisting of a failure to disclose plus an affirmative statement or act which, together, mislead the party claiming estoppel. " 'It is the duty of a person having a right, and seeing another about to commit an act infringing upon it, to assert his right. He cannot by his silence induce or encourage the commission of the act and then be heard to complain.' " *Shockley*, 74 Ill. App. 3d at 96, 392 N.E.2d at 679, quoting *Bondy v. Samuels* (1929), 333 Ill. 535, 546, 165 N.E. 181.

■ Third, while a party claiming estoppel cannot unreasonably ignore other means of learning of the facts, there comes a time when a party is entitled reasonably to believe that no further investigation is necessary. *Shockley*, 74 Ill. App. 3d at 97, 392 N.E.2d at 680.

*Shockley*, in applying the above principles to the case before it, found that a genuine issue of material fact existed based upon the following facts: (1) Tasch's failure to disclose the existence of Azar Nut until after the limitations period expired; (2) the captions of Tasch's letters noting that Ryder was a prospective defendant and self-insured; (3) Tasch's disclosure in his letter and telephone conversations that he represented Ryder and was negotiating on its behalf; (4) Tasch's statements that he was interested in settlement and that he would hate to be involved in unnecessary litigation; and (5) plaintiffs' counsel's initial reliance on the fact that the truck which injured plaintiff bore Ryder's name.

■ We find the facts giving rise to a genuine issue of material fact on the issue of estoppel in *Shockley* to be substantially present in this case. Foremost is the fact that Central held itself out to the world on the public records as nothing less than the full owner of the property. We distinguish on this ground *Dodd v. Cavett Rexall Drugs, Inc.* (1988), 178 Ill. App. 3d 424, 533 N.E.2d 486, a case on which Central relies. In *Dodd*, defendant's *non*ownership was a matter of public record. Here, on the other hand, the public records revealed Central to be the full owner of the property. True, neither Central nor Longenecker had a duty to record the installment contract. However, when faced with a potential claim of liability resulting from a defect in the property, a claim for which it was not responsible, Central remained silent. Only after the applicable limitations period passed did Central inform the world that it had less than full ownership rights and that Longenecker, not it, was the party having possession and control of the property on the injury date.

We also find significant, especially in light of the state of title, the various correspondences and telephone conversations between plaintiff's attorney, Mark Levin, and Michael Boyle, the adjuster for Bandrigna and Associates, which represented Home and Automobile Insurance Company. Each of these letters indicated that Central was the insured, that Boyle was an adjuster, and that Boyle needed plaintiff's medical records and a consent form. In telephone conversations, Boyle represented to Levin that he was adjusting the matter for Central as owners of the property.

As stated in *Shockley*, estoppel may be based on conduct consisting of a failure to disclose plus an affirmative statement or act which, together, mislead the party claiming estoppel. Here, Central both failed to disclose its true relation to the property and made affirmative statements consistent with full ownership. These acts, taken together, raise a question of fact on whether Central should be estopped from asserting an ownership status inconsistent with full ownership.

Finally, we find significant that Levin did in fact take measures calculated to learn the names of all who had an ownership interest in the property on the injury date. Interestingly, these measures led Levin to Central as owner every time, and at no time did Levin learn that Central had other than full ownership rights. Even Levin's direct inquiry to the bank itself was met with the response that Central owned the property and that Levin would have to rely on the public records for more information. When Levin returned to the public records a second time, Central's ownership was confirmed.

In the end, whether Levin, as Central asserts, could have easily (1) filed suit against Central earlier and propounded a simple interrogatory, (2) asked tenants to whom they paid rent, or (3) asked Bandrigna whether any additional insureds existed on the policy presented a question of fact for a jury to decide. A jury, not this court, should decide whether Levin unreasonably ignored other means of learning the facts or whether he reasonably believed that no further investigation was necessary.

In summary, we find a genuine issue of material fact existed on whether Central should be equitably estopped from asserting an ownership status inconsistent with full ownership. From the evidence, a jury could find all the essential elements of estoppel and rule against Central. Accordingly, the grant of summary judgment for Central is reversed.

In passing, we distinguish the cases Central cites to support affirmance. In both *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 548 N.E.2d 403, and *Joliet Mass Transit District v.*

*Illinois Fair Employment Practices Comm'n* (1980), 85 Ill. App. 3d 270, 407 N.E.2d 80, the courts prevented plaintiff from asserting an estoppel argument based on the respective State agency's inability to waive through its conduct the mandatory notice of injury statute. No such statute is involved here.

In *Pack v. Santa Fe Park Enterprises, Inc.* (1991), 209 Ill. App. 3d 648, 568 N.E.2d 360, upon which Central relies in its motion to cite supplemental authority, summary judgment in favor of defendant was affirmed; the appellate court agreed that plaintiff's counsel could not rely as a matter of law upon defendants' insurance agent's inaccurate representations that plaintiff's date of injury occurred on September 19, 1985, not September 14, 1985. Clearly, plaintiff's counsel in *Pack* was unjustified in relying on defendants' representations regarding his own client's date of injury.

■ Turning next to the application of equitable estoppel relative to Longenecker, we believe dismissal was proper. The record shows that plaintiff waited 18 months after learning of Longenecker's existence to name him as a defendant. Only when faced with Central's potentially dispositive summary judgment motion did plaintiff decide to sue Longenecker. As a matter of law, plaintiff's failure to file suit against Longenecker until 18 months after learning of his existence is patently unreasonable.

We also reject plaintiff's other procedural arguments which he advances to keep Longenecker as a defendant in this suit. First, plaintiff contends that Longenecker was timely sued as an "unknown party" pursuant to section 2—413 of the Code. However, section 2—413 applies only to *in rem* or *quasi in rem* actions. (4 R. Michael, Illinois Practice: Civil Procedure Before Trial §28.6 (1989) (hereinafter Illinois Practice).) The section specifically states "unknown owners *** who may have been interested in the subject matter of the action." Ill. Rev. Stat. 1987, ch. 110, par. 2—413.

Additionally, even if the section were to apply, plaintiff failed to file the requisite affidavit or initiate the publication requirements of the section. His failure in this regard requires that his advancement of section 2—413 also be rejected.

Misnomer also has no application to this case. A misnomer occurs when the correct person was sued and served, but the name specified was incorrect in some way. (Illinois Practice §28.7, at 20.) Here, Longenecker was not even named in plaintiff's initial complaint.

Plaintiff's attempt to set forth the "discovery" rule and fraudulent concealment under section 13—215 of the Code (Ill. Rev. Stat. 1987, ch. 110, par. 13—215) must also fail. Here, plaintiff was injured

when a defective bannister collapsed. At the time of his injury, plaintiff knew his injury was wrongly caused. Within the limitations period, plaintiff sued Central to recover for his injuries. Under this set of facts, the discovery rule is not applicable as plaintiff knew all along that he was wrongfully injured. (See Illinois Practice §15.2, at 184 (noting that Illinois law limits discovery rule to situations where plaintiff is unaware of a tort when it occurs).) For similar reasons, fraudulent concealment is not available. See Illinois Practice §17.5, at 227 ("The activity of the defendant must conceal the existence of the cause of action, not merely the identity of the prospective defendant").

For the foregoing reasons, we: (1) reverse the order of the circuit court of Cook County which granted summary judgment to Central; (2) remand the case for an evidentiary hearing on the issue of estoppel relative to Central; and (3) affirm the dismissal against Longenecker.

Affirmed in part; reversed in part and remanded.

CAMPBELL and MANNING, JJ., concur.