M.J. OLDENSTEDT PLUMBING COMPANY, INC., Plaintiff-Appellant, v. K MART CORPORATION *et al.*, Defendants-Appellees.

Third District    No. 3—92—0827

Opinion filed February 10, 1994.

Norman J. Lerum, of Chicago, for appellant.

Steven G.M. Stein, of Stein, Ray & Conway, of Chicago (Christopher Murdoch, of counsel), for appellees.

PRESIDING JUSTICE SLATER delivered the opinion of the court:

This is a breach of contract action concerning a construction contract entered into between plaintiff, Michael Oldenstedt, and defendant, Leopardo Construction, Inc. Plaintiff filed a complaint against defendant and others to foreclose a mechanics' lien, alleging breach of contract. The suit was filed in the name of plaintiff's corporation, M.J. Oldenstedt Plumbing Co., Inc. Defendant filed a counterclaim against plaintiff alleging breach of contract. Following a bench trial, the court entered a judgment in favor of defendant against plaintiff individually in the amount of $79,038. Plaintiff appeals, and we affirm.

During the summer of 1991, K mart Corporation built a new K mart store in Bolingbrook, Illinois. Defendant acted as the general contractor during construction, and plaintiff was a subcontractor of defendant. In March 1991, plaintiff received certain drawings describing the site utilities (the water main, storm sewer and sanitary sewer) and interior plumbing. Plaintiff agreed to install the site utilities and interior plumbing for $709,500. This bid was communicated to defendant sometime in early May in a phone conversation between plaintiff and Randy Butler, defendant's estimator. Butler told plaintiff that the bid was acceptable and that plaintiff would receive a written subcontract agreement in the mail.

The written contract was drafted May 15 and received by plaintiff on or about May 22. The contract set out the details of the job and plaintiff's responsibilities. The contract apparently contained certain addenda which called for more work to be done by plaintiff. Plaintiff had not contemplated this additional work when submitting his bid. The contract also required plaintiff to comply with defendant's work schedule. Specifically, the agreement stated that plaintiff was required to:

"Supply adequate man power, material and equipment at all times to meet [the] project schedule. *** Cooperate with the Contractor in scheduling and performing the work to avoid conflict, delay in or interference with the work of the Contractor, other subcontractors, or the Owner's own forces."

Plaintiff signed the contract agreement on or about May 28, but he never delivered it to defendant. However, Louis Cusimano, the principal in charge and project manager for defendant, testified that

he had several conversations with plaintiff concerning the written contract during the project. Plaintiff told Cusimano that he had signed the contract and promised to return the executed agreement.

The subcontract agreement called for plaintiff to begin the project on May 27. Plaintiff began the interior plumbing portion of the project on or around this date. According to defendant's work schedule, plaintiff's work was to be completed on July 18. Plaintiff testified that he did not know about this schedule until the middle of June. However, defendant presented testimony that the progress schedule was posted on the wall of the meeting room in defendant's trailer on the jobsite, and that plaintiff and his partner, George Walker, were in the trailer several times each week. Moreover, plaintiff attended weekly progress meetings during which the job schedule was discussed.

Not long after plaintiff began work on the project, Cusimano and Peter Gronset, the project superintendent, became concerned that plaintiff was working too slowly. Plaintiff did not begin the site utilities work until June 13. Cusimano had numerous conversations with plaintiff at the jobsite concerning the pace of plaintiff's work. On June 19, June 27 and July 2, Cusimano sent letters to plaintiff stating that plaintiff was in breach of the subcontract agreement by failing to work expeditiously and without delay, and that plaintiff would have to increase progress.

On July 17, Cusimano and Gronset met with Walker because it was clear that plaintiff would not finish his work by July 18 as required by the schedule. The purpose of the meeting was to establish a new schedule for the site utility work. The new schedule gave plaintiff until August 10 to complete his work. Cusimano testified that when he visited the site 10 days later on July 27, plaintiff was already 12 to 14 "crew days" behind schedule. A "crew day" is the amount of work which can be accomplished by one crew in one day. By the last week of July, plaintiff had at least two crews working the site each day.

When plaintiff fell behind the new schedule, Cusimano contacted Elmwood Sewer & Water to supplement plaintiff's crews. Cusimano testified that when Elmwood came to the jobsite on July 29, plaintiff's crews positioned their equipment to block Elmwood's ability to work. This was disputed by plaintiff. That afternoon, Cusimano delivered a termination letter to plaintiff. The letter stated that plaintiff had breached the contract and that the contract was therefore cancelled.

Following the termination of the contract, defendant hired Elmwood Sewer & Water to complete the site utility work and Cecchin Plumbing & Heating to complete the interior plumbing. Defendant

presented evidence that these two companies had to do substantial remedial work to correct deficient work performed by plaintiff, as well as complete the project. Cusimano testified that defendant paid Elmwood $350,000 for labor and materials. Defendant paid Cecchin approximately $86,500.

Plaintiff testified that he had completed 85% of the project when he was terminated. He argued that the value of his work was $667,010. Albert Sarno of Elmwood testified that plaintiff had completed approximately 42% of the site utility work, the major component of the project. Gary Ginter, a licensed engineer, testified that plaintiff had completed 60% of the sanitary sewer, 50% of the water main and 20% of the storm sewer.

In his memorandum opinion, the trial judge found that plaintiff was bound by the written subcontract agreement and that plaintiff had breached the contract by performing the work in an untimely and unworkmanlike manner. The court also made the following findings:

> "3. The reasonable value of the work and services performed by the plaintiff is $471,571, of which it has been paid the sum of $10,000; the defendant Leopardo Construction Inc. is entitled to a credit of $118,609 for sums paid to contractors and materialman of plaintiff pursuant to a stipulation of the parties; that this court makes no finding with regard to the amount due suppliers and materialmen or whose obligation it may be to pay such.
>
> 4. The reasonable value of the work and services required to be performed by counterclaimant Leopardo Construction Inc. to complete plaintiff's contract and correct work and services performed in an unworkmanlike manner is $422,000."

The court held that plaintiff was not entitled to a mechanics' lien and that defendant was entitled to a judgment against plaintiff in the amount of $79,038.

On appeal, plaintiff first argues that the trial court erred in determining that he was bound by the terms of the subcontract agreement. Whether or not a contract exists is a question of law. (*Robinson v. Christopher Greater Area Rural Health Planning Corp.* (1991), 207 Ill. App. 3d 1030, 566 N.E.2d 768.) In this case, however, the parties agree that a contract exists. They disagree as to the terms and conditions of the contract. Plaintiff contends that because he never delivered a signed copy of the subcontract agreement to defendant, the terms of that written agreement were not part of the contract between the parties. Plaintiff argues that the contract was formed during the telephone conversation when plaintiff called in his bid and that bid was accepted. Since he never agreed to any further

terms or conditions, plaintiff claims that the only terms of the contract were that defendant would pay him $709,500, and he would complete the work within a reasonable time. According to plaintiff's argument, he was not required to conform to defendant's work schedule and time deadline.

The trial court held that plaintiff was estopped from denying that the agreement between the parties was the written subcontract agreement. Estoppel is an equitable doctrine preventing a party from taking advantage of his own wrongdoing. (*Neaterour v. Holt* (1989), 188 Ill. App. 3d 741, 544 N.E.2d 846.) Equitable estoppel has been defined as " 'the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in chancery, from asserting rights which might otherwise have existed as against another person who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right.' " (*Buczak v. Central Savings & Loan Association* (1992), 230 Ill. App. 3d 490, 498, 594 N.E.2d 1291, 1296, quoting 18 Ill. L. & Prac. *Estoppel* § 22 (1956).) To be estopped, a party must have engaged in conduct which reasonably causes the other party to change his position by lulling the claimant into a false sense of security. *Arneson v. Board of Trustees* (1991), 210 Ill. App. 3d 844, 569 N.E.2d 252.

■ Our supreme court has set out the elements of equitable estoppel: (1) words or conduct of the party against whom estoppel is alleged, constituting either misrepresentation or concealment of material facts; (2) knowledge on the part of the party against whom estoppel is asserted that the representations were untrue; (3) the party claiming the benefit of estoppel must not have known the representations were false either at the time they were made or at the time they were acted upon; (4) the party estopped must either intend or expect that his conduct or representations will be acted upon by the party asserting estoppel; (5) the party claiming the benefit of estoppel must have relied or acted upon the representations; and (6) the party claiming the benefit of estoppel must be in a position of prejudice if the party against whom estoppel is alleged is permitted to deny the truth of the representations made. (*Vaughn v. Speaker* (1988), 126 Ill. 2d 150, 162-63, 533 N.E.2d 885, 890.) Fraudulent intent is not necessary to estoppel. (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675.) "Rather, estoppel is appropriate against a person who adopts a position which reasonably misleads someone into detrimental reliance, regardless of the intent of his actions, if to hold otherwise would have an unjust effect." *Buczak*, 230 Ill. App. 3d at 499-500, 594 N.E.2d at 1297.

■ We find that the trial court did not err in holding that plaintiff was estopped from denying he was bound by the subcontract agreement. Plaintiff claims that he did not deliver the signed contract because it contained additional work not contemplated in his bid. Assuming for the sake of argument that plaintiff truly had no intention of agreeing to the contract, he certainly undertook both words and conduct which amounted to a misrepresentation or concealment of that fact. Plaintiff knew at the time that his bid was accepted that defendant intended the written contract to constitute the terms and conditions of the parties' agreement. When plaintiff's bid was accepted, he was informed that the written contract would be mailed to him. He received the contract around May 22 and presumably discovered at that time that the contract contemplated additional work. However, he went ahead and commenced work at the site in late May in accordance with the contract. It was reasonable for defendant to conclude at that point that plaintiff had agreed to the terms of the contract. Furthermore, on several occasions during the job, Cusimano asked plaintiff about the written contract. Plaintiff assured Cusimano that he had signed the contract and that he intended to return it to defendant. During these conversations, plaintiff did not object to any of the terms of the contract. Thus, plaintiff indicated his intention was to be bound by the contract. Defendant would certainly be prejudiced if plaintiff were allowed to deny the truth of these statements, as defendant would lose the contractual remedies it sought to obtain by entering into the contract in the first place. Defendant reasonably relied on plaintiff's statements and allowed plaintiff to continue working. Plaintiff adopted a position which reasonably misled defendant into detrimental reliance. We agree with the trial court that to hold that plaintiff was not bound by the terms of the written contract simply because it was not delivered would, under these circumstances, be unjust.

■ We note that even if we were not to apply the doctrine of equitable estoppel in this case, we would nonetheless find that an enforceable written contract existed between the parties. Plaintiff testified that he signed the written contract. Cusimano testified that plaintiff told him that he had signed the contract. This court has held that where one party signs a contract and informs the other party that he has done so, a binding written contract may be formed regardless of whether or not the contract is actually delivered. (*Soderstrom v. Rock River Valley Pigeon Club, Inc.* (1984), 122 Ill. App. 3d 819, 461 N.E.2d 547.) Delivery is not an essential element to the formation of a contract unless the offer specifies actual delivery as a requirement of acceptance. "Otherwise, acceptance may be by any

reasonable means." (*Soderstrom*, 122 Ill. App. 3d at 820, 461 N.E.2d at 548.) We find that the signing of the contract and the commencement of work by plaintiff constituted reasonable acceptance of the written contract in this case. See also *Lakshman v. Vecchione* (1981), 102 Ill. App. 3d 629, 430 N.E.2d 199; *Landmark Properties, Inc. v. Architects International-Chicago* (1988), 172 Ill. App. 3d 379, 526 N.E.2d 603 (holding that even an unsigned contract may become binding if a party, by his acts and conduct, indicates his assent to its terms); *Amelco Electric Co. v. Arcole Midwest Corp.* (1976), 40 Ill. App. 3d 118, 351 N.E.2d 349 (subcontractor held bound by subcontract agreement, even though it was never signed or delivered, because subcontractor commenced performance and otherwise acted upon the contract).

Plaintiff next argues that the trial court erred in finding that he breached the contract. The question of whether a contract has been performed according to its terms is one of fact and the findings of the trial court will not be disturbed on review unless they are against the manifest weight of the evidence. (*Hartwig Transit, Inc. v. Menolascino* (1983), 113 Ill. App. 3d 165, 446 N.E.2d 1193.) The trial court determined that plaintiff breached the contract by failing to perform in a timely and workmanlike manner. We find the evidence sufficient to support the trial court's decision.

The contract required plaintiff to comply with defendant's project time schedule, to supply adequate manpower, material and equipment to meet the schedule, and to cooperate with defendant in scheduling and performing the work to avoid delay. Defendant presented evidence that plaintiff failed to meet these requirements. When he was first asked to bring out additional crews, plaintiff refused. Plaintiff then failed to complete his work by July 18 as required by the schedule.

Plaintiff testified that he knew nothing about the time schedule until the middle of June. However, Cusimano testified that plaintiff knew about the time schedule from the beginning of the project. Plaintiff also claimed that the schedule was unreasonable. However, Mr. Sarno, plaintiff's replacement, testified that he could have completed the job in six weeks, the amount of time given the plaintiff under the original schedule. Finally, plaintiff testified that his work was slow in the beginning because he had to wait until K mart made a decision about pipe size. However, Cusimano testified that there were other parts of the project plaintiff could have worked on while he waited for that information. When the testimony of witnesses is conflicting, it is within the exclusive province of the trial court, as the trier of fact, to determine the witnesses' credibility and the weight

to be given their testimony. *Sianis v. Kettler* (1988), 168 Ill. App. 3d 1071, 523 N.E.2d 157.

The evidence also showed that the parties met on July 17 and drafted a revised schedule which extended plaintiff's time to complete the work until August 10. Plaintiff quickly fell behind this schedule as well. Cusimano testified that by July 27, plaintiff was 12 to 14 crew days behind schedule. He also testified that plaintiff's failure to keep up forced him to reschedule the work of other trades and jeopardized the completion date for the entire project. Mr. Grosnet, the project superintendent, testified that he was forced to reschedule the pour of the store's concrete floor as a result of plaintiff's slow pace, and that plaintiff's work was delayed because his crews had to return to areas which were finished but failed to pass inspection.

■ Plaintiff argues that even if he did breach the contract, it was not a material breach because he was only four days behind schedule when he was terminated on July 29. He reaches this conclusion by arguing that although he was 12 crew days behind schedule, he had three crews working at the site at the time he was terminated. Therefore, he could have made up the 12 crew days in only four days. Initially, we note that plaintiff's claim that he had three crews at the site was disputed by defense witnesses. Moreover, even if plaintiff was only four days behind the July 17 schedule, he fell that far behind after only 10 days, and this was the second schedule plaintiff failed to maintain. In light of all of the evidence regarding the slow pace of plaintiff's work, we find that the trial court's determination that plaintiff materially breached the contract was not against the manifest weight of the evidence.

■ Plaintiff next contends that the trial court erred in calculating damages. He first argues that he is entitled to the contract price because his work constituted substantial performance of the contract. While it is true that a contract which is substantially performed in a workmanlike manner generally entitles the builder to the contract price (*George Butkovich & Sons, Inc. v. State Bank* (1978), 62 Ill. App. 3d 810, 379 N.E.2d 837), the trial court in this case found that plaintiff failed to substantially perform under the terms of the contract. The issue of whether there has been substantial performance is a question of fact, and the trial court's finding will not be disturbed unless it is against the manifest weight of the evidence. (*W.E. Erickson Construction, Inc. v. Congress-Kenilworth Corp.* (1986), 115 Ill. 2d 119, 503 N.E.2d 233.) In light of our finding that plaintiff materially breached the contract, we agree with the trial court that plaintiff failed to render substantial performance.

A builder who fails to substantially perform a contract is not

entitled to the contract price. (*Folk v. Central National Bank & Trust Co.* (1990), 210 Ill. App. 3d 43, 567 N.E.2d 1.) Rather, "the builder's right is, under a theory of quantum meruit, a right to recover only reasonable compensation for value received by the purchaser over and above the injury suffered by the builder's breach." (*Butkovich,* 62 Ill. App. 3d at 811, 379 N.E.2d at 838.) The trial court properly applied this formula to calculate defendant's damages in this case.

■ Plaintiff's next argument concerning damages is that the trial court's determination of the value of plaintiff's work was too low. The trial judge found that the reasonable value of the work and services performed by plaintiff was $471,571. He apparently reached this figure by adding the amount plaintiff paid his laborers (approximately $128,500) to the amount plaintiff spent to purchase materials (approximately $343,500). Plaintiff claims he should have been given credit for other expenses including overhead, profit, union benefits, wages owed to himself and other family members, and wages still owed to laborers but not paid on date of determination. Plaintiff makes no argument as to why he should have been given credit for these expenses. The trial court was concerned with determining what plaintiff's work was worth, not what it cost. The parties presented conflicting testimony regarding the value of plaintiff's work. We find that the trial court's determination was well within the range of the evidence.

Plaintiff also argues that the trial court erred in determining that defendant was entitled to a $422,000 setoff against the value of plaintiff's work for the cost of remedial work and completion of the project. One of the provisions of the written contract provided that if plaintiff breached the contract and was terminated, he was responsible for the cost of completion of the work. Plaintiff's argument here is that this provision should not apply because he did not breach the contract. We have already determined, however, that plaintiff did in fact breach the contract. Plaintiff does not challenge the figures used by the trial court in calculating the completion and remedial work costs. However, our review of the record indicates that the $422,000 setoff awarded to defendant was reasonable and well supported by the evidence. We therefore affirm the judgment of the trial court in favor of defendant in the amount of $79,038, the difference between the value of plaintiff's work (minus a stipulated amount of $128,609 for payments previously made by defendant) and defendant's setoff.

■ Finally, plaintiff argues that the trial court erred in entering judgment against plaintiff personally rather than his corporation, M.J. Oldenstedt Plumbing Co., Inc. This issue turns on whether the parties intended the contract to be between defendant and plaintiff,

d/b/a Oldenstedt Plumbing Co., or between defendant and plaintiff's corporation. (*Tin Cup Pass Ltd. Partnership v. Daniels* (1990), 195 Ill. App. 3d 847, 553 N.E.2d 82.) Plaintiff's company was incorporated on May 31, 1991. This was after plaintiff's bid was accepted, after the written contract was drafted and sent to plaintiff, after the contract was signed by plaintiff, and after plaintiff began work on the project. There is no evidence that defendant intended to contract with the corporation or even knew it existed. We therefore affirm the judgment against plaintiff personally.

For the reasons stated above, the judgment of the circuit court of Will County is affirmed.

Affirmed.

BRESLIN and McCUSKEY, JJ., concur.